————o————

CHARLES H. MANSUR, Respondent, vs. JASON G. WILLARD AND MARY WILLARD, HIS WIFE, Appellants, *and vice versa.*

1. *Equity—Sale under deed of trust—Parol statements of purchaser, as to intention in purchasing—Resulting trust.*—Where the beneficiary in a deed of trust was apparently a *bona fide* purchaser, at the sale by the trustee, of an absolute title to real estate, the fact that the maker of the deed was a brother-in-law, and the fact that the purchaser casually said to him afterward, that he only wished by the purchase to secure his debt, and when that was paid designed to re-convey the property, were held not to be such circumstances as of themselves to render him a trustee for the maker of the deed. Such a remark was no declaration of trust, which a Court of Equity could enforce had it been reduced to writing. And being parol it was a nullity under the statute of frauds. Nor would such declaration vest such equitable interest in the grantor as to subject it to his creditors.

*Appeal from Livingston Circuit Court.*

*Broaddus & Pollard*, for Appellants.

*C. A. Mansur, in propria persona*, Respondent.

NAPTON, Judge, delivered the opinion of the court.

The facts of this case are stated so fully in the finding of the court, that a statement of the petition, answer and replication is unnecessary.

It appears that the defendant Willard, became the purchaser of the land in controversy in May, 1857; that the consideration was $905, and $655 of this belonged to his wife (the co-defendant), who was the widow of his brother; that the remainder of the purchase money was derived from the sale of a lot and office in the town of Chillicothe, in which Willard had an interest. The deed was made to Willard, though his wife's money mainly paid for the land.

The plaintiff had a small claim against Willard, in Dec. 1858, for $20.68, and subsequently in 1862, secured his claim by a note, and afterwards by a judgment before a justice, and subsequently by filing a transcript of this judgment in the clerk's office, and suing out execution thereon and buying at the execution sale and getting a deed from the sheriff. This is the plaintiff's title and was consummated in 1872.

Before this purchase by plaintiff through the sheriff, Willard was, as early as 1860, in failing circumstances; and in that year had executed two deeds of trust on the land in dispute; one, executed in April, 1860, to one Samuels, to secure a debt of $360, and the other, executed to one Harper, to secure a debt of $200, due Ann Lawson. At the request of the holders of the notes secured in the prior incumbrance to Samuel, the lands embraced in both deeds were put up for sale in April, 1862, and Lawson, who was the beneficiary in the last deed, or junior incumbrance, bought the land. The trustee Samuel executed a conveyance to him.

No question is made of the *bona fides* of both these deeds of trust; nor is there any question of the propriety of the

sale to Lawson. But there is an attempt to show by testimony, and the court so finds, that Lawson received this deed from the trustee in the first deed of trust, as a trustee for Willard and wife, defendants.

This finding and the decree rendered on it, seem to have been based solely on the evidence of Lawson himself, which was, that after the sale was over, and he had bought, he dined at Willard's, and at the table observed to Mrs. Willard, who was his sister-in-law, that he only wished to secure his debt and interest, and when that and the prior incumbrance were paid, he designed to convey to her the property. This the Circuit Court construed as a declaration of trust, and held Lawson's title therefor as a mere trust, subject to Willard's creditors whenever the two mortgages were paid off. But the court in the decree did not allow the original interest of Mrs. Willard's to be sacrificed to Willard's creditors, and therefore only allowed the deed of Lawson to be set aside as to Willard's interest, which was a small one.

The decree of the court was undoubtedly right, if Lawson's purchase can be regarded as in trust for Willard and wife. This trust is apparently inferred, partly from the declarations of Lawson above stated, and partly because of the connection between Lawson and Willard, who were brothers-in-law.

Lawson at the time of his purchase at the trustees' sale, was apparently a *bona fide* purchaser of an absolute title. His reasons for buying were obvious, and although he may have intended to convey the land to his sister-in-law, at that time, yet that intention suggests no marks of fraud. There was no proof of any previous agreement between him and Willard; no advance of money by Willard; nor is there anything in the testimony to show that the land was bought at a sacrifice, by reason of any understanding of this sort; or that creditors were deterred from or induced to abstain from bidding by reason of any such understanding.

As to the observation of Lawson at the dinner table, it was no declaration of trust which a Court of Equity could enforce, had it been reduced to writing. Being in parol, under

the statute of frauds, it was a nullity. The family connection between Lawson and Mrs. Willard, readily explains Lawson's conveyance to her; and has no tendency to impute fraudulent motives. Mrs. Willard could not have enforced the trust on such table talk as was in evidence; and if Lawson had an absolute title, which to all appearance he obtained from the trustee of Willard, the creditors of Willard could not complain of any disposition which Lawson chose to make of the land. They were at liberty to buy or bid against him; and, if they supposed he was buying at an under value, it was their interest to do so. They did not bid, and he acquired the same title which any other creditor or bystander would have got. That title he could dispose of at his pleasure.

The finding of the court, therefore, that Lawson's title was in trust for defendants, seems to be without evidence in its support. The declaration he made after the purchase, of his intention to convey to Mrs. Willard, does not make him a trustee; nor does it vest such equitable interest in her or her husband, as would render it subject to creditors of the husband. (See Dallam vs. Renshaw, 26 Mo., 536; Price vs. Evans, *Id.*, 31; Lane vs. Ewing, 31 Mo., 87.)

The judgment is reversed. Judge Sherwood absent. The other judges concur.