ROGERS v. JOHNSON *et al.*, *Appellants*.

Division Two, December 4, 1894.

1. Administration: DEBTS ACCRUING AFTER DEATH OF DECEASED: JUDGMENT OF PROBATE COURT: COLLATERAL ATTACK.    Where the probate court has jurisdiction of the subject-matter and the parties, its judgment allowing the sale of a decedent's land for the payment of a debt that accrued after his death, is not subject to collateral attack.

Rogers v. Johnson.

2. ———: DISCHARGE OF ADMINISTRATOR. Where no order has been made by the probate court discharging an administrator, he will still continue within the control and jurisdiction of the court.

3. ———: FINAL SETTLEMENT, ORDER APPROVING: APPOINTMENT OF ADMINISTRATOR DE BONIS NON: COLLATERAL ATTACK. Although an order was made approving the final settlement of an original administrator, it will be presumed, in the absence of any showing to the contrary, that the appointment of an administrator *de bonis non* was legally and properly made, and that the estate had not been fully administered, and such an appointment will not be subject to collateral attack.

4. ———: NOTICE OF APPLICATION TO SELL LAND: USE OF NOTICE BY SUCCEEDING ADMINISTRATOR. Where notice is given by an administrator of intention to apply for an order to sell land of an estate to pay debts against it, his successor, as administrator of the same estate, may rely upon the same notice, the first administrator having failed to effect a sale.

5. ———: SALE: APPROVAL: JUDGMENT: COLLATERAL ATTACK. An order of approval of an administrator's sale is a final judgment from which an appeal will lie, and is entitled, in a collateral proceeding, to the same favorable presumptions and intendments that are accorded judgments of circuit courts, and is no more open to collateral attack than the latter.

6. ———: PAYMENT OF DEBTS: TITLE OF HEIRS: ADVERSE POSSESSION. The heirs of a decedent take subject to the payment of the latter's debts, and their possession is not adverse to a purchaser at the administrator's sale for the payment of the debts.

7. ———: ———: ———: INNOCENT PURCHASER. A purchaser of land from heirs of a decedent, though for value and without notice, takes subject to the payment of the debts of the deceased.

8. ———: SALE, DISAPPROVAL OF: LACHES. Delay of an administrator in selling land does not constitute laches, where it was caused by frequent disapproval of attempted sales by the probate court and by injunctive proceedings by other parties.

*Appeal from Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

AFFIRMED.

*T. J. Delaney* for appellants.

(1) The original judgment rendered in favor of Jane D. Brown and the order allowing it as a demand

against the estate of A. Woody, are void, because on the face of the judgment, and from the whole record, it affirmatively appears that the claim for rent for the year 1866, accrued after the death of A. Woody. The estate of decedent can not be sold for debts accruing since his death. (2) The said judgment and the judgment of the probate court of Christian county, allowing said demand, and the judgment of the supreme court of Missouri, affirming said judgment, is not conclusive on defendants herein, because they are neither parties nor privies thereto. (3) The order of the probate court of Christian county, Missouri, approving the final settlement of John H. Woody, made at the October term, 1874, was a final judgment, and, until vacated by a direct proceeding, said court had no further jurisdiction in the premises. *Standard v. Lacks*, 25 Mo. App. 64; *Weinerth v. Trendley*, 39 Mo. App. 333; *State to use v. Roland*, 23 Mo. 97; *Barton v. Barton*, 35 Mo. 162; *Baly v. Lake*, 54 Mo. 200; *Sheetz v. Kirtley*, 62 Mo. 417; *Miller v. Mayor*, 67 Mo. 247; *Smith v. Sims*, 77 Mo. 272; *McLean v. Bergner*, 80 Mo. 414. It was a final judgment, because: *First.* Due notice of intention to make a final settlement was given. *Second.* The publication was legal, and the approval of such settlement is conclusive of such fact, as in matters of probate the same presumption attends the proceedings of the probate court as in courts of general jurisdiction. *Raley v. Guenn*, 76 Mo. 263. *Third.* The presumption is, that the notice was duly filed and recorded as it was found in the probate court and among the files of the estate. This being so, under section 32, article 2, chapter 2, Statute, 1870, it is *prima facie* evidence of such publication. *Fourth.* The mistake of law on the part of the administrator and court in making final settlement, is no grounds for vacating same. *Weinerth v. Trendley*, 39 Mo. App.

333. *Fifth.* As the court found the estate indebted to administrator, the order discharging him would be surplusage. He is discharged by operation of law. Had money been found in his hands on approval of final settlement, suit would lie by distributees without an order of distribution. So limitation would run in favor of administrator after such approval without an order of discharge or distribution. *State to use v. Watson,* 44 Mo. 305; *Morehouse v. Ware,* 78 Mo. 100; *State ex rel. v. Grigsby,* 92 Mo. 419; *State ex rel. v. Shiras,* 39 Mo. App. 560. *Sixth.* The incidents of final judgments to approved final settlement arise, not in consequence of an order of the court directing the administrator's discharge of record, but it is the necessary consequence of the doctrine *res judicata.* 2 Woerner's Law of Administration, sec. 570. *Seventh.* Our statute does not require an order discharging the administrator. It simply requires an approval of the final settlement. *Eighth.* By virtue of such settlement the administrator is *functus officio. Goebel v. Foster,* 8 Mo. App. 443; *Polk v. Schulenburg,* 4 Mo. App. 592; *Garner v. Tucker,* 61 Mo. 427. *Ninth.* The fact that the claim of Jane Brown was contingent and disputed, does not affect the question. The final settlement is a final judgment, notwithstanding the pendency of such claim. Her remedy was an appeal from the judgment approving the final settlement. (4) After such final settlement, the land is not subject to the claims of creditors. *Collamore v. Wilder* 19 Kan. 67. *Public Works v. Columbia College,* 17 Wall. 521; *Pearce v. Calhoun,* 59 Mo. 271; *Titteringlan v. Hooker,* 58 Mo. 593. Nor will the settlement be set aside on account of a mistake in law. *Weinerth v. Trendley,* 39 Mo. App. 333. So far as the land in controversy is concerned, Jane Brown never assumed or attempted to proceed directly against it until long after the final settlement. (5) If

the approval of the final settlement does not operate as
a final judgment, yet the sale under which plaintiff
claims is void because there was no petition for order
of sale and no publication of notice, that order of sale
would be void. The publication of notice and order
thereon, in 1878, will not support the renewed order of
sale made in 1883, especially as the administrator to
whom order was directed in 1878, resigned in 1882.
(6) The order of the probate and common pleas court
approving the report of the commissioners assigning
dower is not final, and, until dower be assigned,
ejectment will not lie. (7) The statute of limitations
defeats the claim of plaintiff. The entry of defend-
ant's grantors in 1868 must be treated as adverse to
the Woody estate and claim of Jane Brown from the
date of entry. *Bobb v. Woodward*, 50 Mo. 103; *Rogers
v. Brown*, 61 Mo. 187; *Mabary v. Dollarhide*, 98 Mo.
198; *Bank v. Fifer*, 95 Mo. 118. (8) In equity, plain-
tiff and those from whom he deduces title are barred.
*Gunby v. Brown*, 86 Mo. 253. Johnson's grantor
took possession in 1868, and Johnson was not a
party to any proceeding, delaying the collection of
claim until March 7, 1879. Jane Brown never
asserted a claim against this land. After the decision
of this court in *Brown v. Woody*, March 17, 1877, she
did nothing until February, 1879, when she sued the
administrator on his bond. Her conduct throughout
shows that she recognized the Johnson title, and is con-
clusive evidence that she parted with all her claim to the
land by virtue of the last deed. (9) Rogers can have
no greater rights than Jane Brown or Cave, as he pur-
chased with full notice of defendants' title, paying an
inadequate price and taking a quitclaim deed. *Stop-
ple v. Schroeder*, 62 Mo. 147. (10) The judgment in
the injunction suit of *Wm. H. Johnson v. Woody,
administrator*, is not conclusive. *First.* Because the

plea of *res adjudicata* was not raised by plaintiff Rogers in this case. It can only be raised by answer. *Kelley v. Hurt*, 61 Mo. 463. *Second.* The issues involved in this suit were not involved in the injunction suit. *Spradling v. Conway*, 51 Mo. 51; *Railroad v. Traube*, 59 Mo. 355. (11) The objection filed by W. H. John-son, to the renewed order of sale in 1884 is not bind-ing on defendants. *First.* Because there is no evi-dence that said W. H. Johnson authorized the filing of such objections. *Second.* At said date, said W. H. Johnson had parted with all his title to these defendants, and they were not parties to such proceed-ing. (12) While there is no statute of limitations governing the time in the which an administrator must sell lands to pay debts, this doctrine does not apply to the case at bar. The right of Jane Brown was against this particular land. The judgment for damages, if regular, is special against the land, and an adverse possession will bar such claim.

*James R. Vaughan* for respondent.

(1) The acts and judgments of probate courts in regard to matters within their jurisdiction import the same verity, are protected by the same elaborate intendments, and are equally as impregnable to collat-eral attacks as those of courts of general jurisdiction. *Camden v. Plain*, 91 Mo. 131; *Rowden v. Brown*, 91 Mo. 429; *Price v. Springfield*, 101 Mo. 116; *Agan v. Shannon*, 103 Mo. 168. (2) The general statute of limitatation is not available in this action as a defense; the possession of the heir or vendee of the heir is not adverse to the administrator of a purchaser from the administrator under an order of sale for the payment of debts. Such vendee stands in the shoes of the heir, and occupies a like relation to the land. *Faran v.*

*Robinson*, 93 Am. Dec. 619. By statute it descends to the heir, "subject to the payments of debts." R. S. 1889, sec. 4465. (3) While the equitable defense of laches may be a good one where the facts sustain it, or may be a good upon proper showing, it is not pleaded in this case, and, even if it were, it is not sustained by the facts in evidence. *Macy v. Stark*, 116 Mo. 499. (4) Orders of sales of lands of decedents in this state given to the administrator as such in his official capacity, do not devolve upon him as an individual, and such orders are binding upon the successor of him who may be such administrator at the time they are made. *Valle v. Flemming*, 61 Am. Dec. 566; *Evans v. Snyder*, 64 Mo. 518; *State ex rel. v. Heinrichs*, 82 Mo. 547; 5 Am. and Eng. Encyclopedia of Law, 282; 2 Woerner's Law of Administration 750, 718, 719, 1064; *Greffet v. Willman*, 114 Mo. 120; *Agan v. Shannon*, 103 Mo. 668. (5) The defendants in this case can not claim want of notice of the proceedings in the probate court. *State to use v. Caste*, 36 Mo. 437; *Bender v. Otte*, 15 Mo. App. 578; *Cooley v. Warren*, 53 Mo. 166; *Crispen v. Hannavan*, 50 Mo. 515. (6) The claim that John H. Woody, the first administrator, made final settlement, and that the order appointing J. C. Woody his successor and all proceedings of the latter were consequently void, is not well taken. *Brashears v. Hicklin*, 54 Mo. 102; *Rugle v. Webster*, 55 Mo. 250; *Wilkerson v. Allen*, 67 Mo. 509. (7) The appointment of J. C. Woody as administrator can not be collaterally attacked in this proceeding. *Macey v. Stark*, 116 Mo. 481; 2 Woerner's Law of Administration, 1033; *Gray's Adm'r v. Cruise*, 36 Ala. 559; *Johnson v. Beasley*, 65 Mo. 250; *Dunn v. Bank*, 109 Mo. 90; *Branford v. White*, 103 Mo. 391. Said appellants are estopped from averring that said J. C. Woody was not legally appointed. They and their

grantor in all legal proceedings so recognized him and he was so recognized by the probate court, heirs and creditors of Abraham Woody for many years. (8) The defense or plea that John Brown had made a quit-claim deed to the land embraced in the judgment and that, hence, the same was void, can not prevail. (9) Judgments allowing and classing demands against estates of deceased persons are binding and conclusive upon the heirs, distributees, and persons claiming and holding under them in the absence of fraud. No fraud is alleged against the administrator Woody in this case (other than the charge of conspiracy between him and Jane Brown), and there was not a particle of evidence of fraud in the case. Woody contested the claim of Jane Brown by trials and appeals to courts of last resort, and, yielding to their mandates, sold the land, and this litigation binds the heirs and those claiming under them.

BURGESS, J.—Ejectment for lands in Greene county, Missouri. The plaintiff claims title through an administration sale made by J. C. Woody, administrator of the estate of Abraham Woody, under an order of sale made in the probate court of Christian county, Missouri, for the payment of debts, more particularly a debt of one Jane Brown, which debt was duly allowed in the probate court of Christian county, and classed in the fifth class of demands against that estate on the thirtieth day of October, 1873. From this order of classification an appeal was taken to the circuit court of Christian county, and subsequently to this court where the judgment of the said probate court was affirmed. *Brown v. Woody*, 64 Mo. 577.

Subsequently J. C. Woody, as administrator *de bonis non*, filed his application in the probate court of

Christian county for an order of sale of the lands to satisfy this judgment, which had been classed as a general demand against the estate. An order of publication was made and notice to the heirs duly published, and at the November term, 1868, an order of sale was made of the land in controversy with other land for the payment of debts. One William H. Johnson, who had theretofore acquired the title of the heirs of Abraham Woody (James Cave and wife, the latter a daughter of Abraham Woody, conveying to Wilkerson, Johnson's grantor, by quitclaim deed) on the seventh day of February, 1869, began injunction proceedings to restrain the sale of the said land, obtaining a temporary writ. But at the September term, 1879, of the circuit court of Christian county the injunction was dissolved, the suit dismissed, and final judgment made in said cause, but not properly entered. From this judgment an appeal was taken by the said William H. Johnson to the supreme court, which was dismissed on the twenty-first day of May, 1883, for the reason that the judgment was not final.

Subsequently a final judgment in proper form was entered by a *nunc pro tunc* order at the February term, 1884, of the said circuit court, at which time said William H. Johnson appeared and had said injunction suit docketed, filed a motion to set aside the said *nunc pro tunc* judgment, and also filed a bill of exceptions to the action of the court. The said Johnson and others, including the defendants in this action, who were then the holders and owners of the land, on the twelfth day of February, 1884, also appeared in the probate court of Christian county, and filed objections to the sale of the land, and any other proceedings for the sale of the land by said Woody, as administrator, to pay debts, which motion was by the court overruled. The petition in the injunction suit was based on the theory that there

had been *devastavit* by the former administrator, alleging, also, that a large amount of personal property had been distributed to the heirs of Woody, and that this should have been recovered back and applied upon the debt; that a large amount of other lands had been left out of the order of sale, etc.

On the fourteenth day of August, 1883, the said Woody as such administrator, reported a sale of the land, made just prior to the writ of injuction, which sale was disapproved and a new order made. At the November term, 1883, of the said court, he again reported a sale of the land, which was disapproved, and the order of sale again renewed. At the February term, 1884, he made another report of sale, which was disapproved; and again at the May term of the said court he reported a sale of the said land to Lee Holland, which sale was approved, and under this sale plaintiff claims the title upon which he bases this action, he having acquired by deed the title of Holland. The sales prior to that to Lee Holland were disapproved upon the ground that the sums at which the land was sold were inadequate. These renewed orders recited that all objections and motions to the contrary were overruled. Lee Holland conveyed the land to one James Cave, and Cave to the plaintiff.

The answer filed by the defendants in this case pleads the ten year statute of limitations based upon adverse possession. It alleges, among other things, that all the title of J. D. Brown, Jane Brown's husband, had been acquired by the said Abraham Woody. It avers that Jane Brown, prior to the application to sell the lands, conveyed the same by quitclaim deed to one Wilkerson; sets forth a number of matters, equitable in their nature, and pleads the statute of limitations. The replication is a general denial.

Upon the trial the principal defenses relied upon

were: the statute of limitations, it being claimed that the possession of defendants and their grantors was adverse to the administrator and a purchaser under him; that the reappointment of J. C. Woody was void and hence the administrator's sale by him was void; that no notice of application for an order of sale had been given, etc.    Upon the trial the plaintiff prevailed, and, after ineffectual motions in arrest and for a new trial, the defendant appealed to this court.

Both plaintiff and defendants claim title from the same source, Abraham Woody, deceased, the plaintiff under administrator's deed, and the defendants from his legal heirs.    It, therefore, becomes unnecessary to consider any question as to the title of Abraham Woody.

The first contention on the part of defendants is that the original judgment rendered in favor of Jane D. Brown, and the order allowing it as a demand against the estate of A. Woody, deceased, are void, because it is claimed that on the face of the judgment, and from the whole record, it affirmatively appears that the claim for rent for the year 1866 accrued after the death of said A. Woody, and that his land could not be sold for debts which accrued subsequent to his decease.

Clearly the judgment was not void, unless rendered so because of the want of jurisdiction in the court, over the parties or the subject-matter of the controversy, and that the probate and circuit courts of Christian county had such jurisdiction was settled by this court in *Brown v. Woody*, 64 Mo. 547.    And, unless the judgment was absolutely void, it was not subject to collateral attack, although it may, in fact, have been erroneous, or bottomed on a claim for which the land of deceased could not have been legally sold for the purpose of paying it.

Another contention is that the order of the probate court of Christian county, approving the final settlement of John H. Woody, made at the October term, 1874, was a final judgment, and, until vacated by a direct proceeding, that court had no further jurisdiction of the premises, and after such settlement the land of the deceased could not be subjected to the payment of debts due by the estate. The record shows that the notice given by the then administrator, John H. Woody, of his intention to make final settlement was at the October term of said probate court, 1870, but that it was not made until four years thereafter, and at the October term, 1874. It is stated in defendant's abstract, and not controverted by counsel for plaintiff, that orders were made from time to time continuing said settlement until the time at which it was made, and the power of the court to do so, is not questioned.

As it does not appear that there was any order made discharging the administrator, he still remained within the control and jurisdiction of the court. *Rugle v. Webster*, 55 Mo. 246. But this settlement was final, as shown by the order of the court approving it. It must, however, be presumed in the absence of anything being shown to the contrary, that the estate had not been fully administered, and the order appointing J. C. Woody administrator *de bonis non* was legally and properly made. In such circumstance the appointment was not subject to collateral attack. Thus it has been said that, "objections to letters of administration because steps preliminary to their issuance were not taken in the probate court should be made in that court and not in a collateral suit." *Macey v. Stark*, 116 Mo. 481. See, also, 2 Woerner's Amer. Law of Administration, p. 1033; *Johnson v. Beazley*, 65 Mo. 250; *Dunn v. Bank*, 109 Mo. 90; *Brawford v. Wolfe*, 103 Mo. 391.

A further contention is that the administrator's sale under which plaintiff claims title is void, because there was no petition for order of sale, and no publication of notice that such an order would be applied for. That the publication of notice and order thereon, will not support the renewed order of sale made in 1873, especially as the administrator to whom the order was directed in 1878 resigned in 1882.

The record shows that an order of sale of the real estate of the decedent was made at the November term, 1878, of said probate court, which recites that, "the order of publication made at the August term, of this court upon the petition of the said administrator (J. C. Woody, administrator *de bonis non,* of the estate of Abraham Woody, deceased), asking for an order for the sale of certain real estate of the deceased therein described, for the payment of a debt due by said estate therein mentioned, the same being a judgment in favor of the said Jane Brown against John H. Woody, formerly administrator of the said estate, for the sum of $600, damages on account of the deforcement of her dower in said estate, has been published for four weeks in the Ozark *Monitor and Leader,* a newspaper published in Christian county, Missouri, the last publication of which was more than twenty days prior to the first day of the present term of this court," and then proceeds to order the land in controversy sold at public sale for cash in hand.

In pursuance to this order the land was sold by the administrator who made report of the sale at the August term, of said probate court, 1883, which was disapproved, and the order of sale renewed, the land again sold in pursuance thereof, by J. C. Woody, administrator *de bonis non,* at the November term, 1883, which sale was likewise disapproved and the order of sale again renewed.

Again at the February term following, the administrator reported the sale of the land in compliance with the last order, and this sale was also disapproved for like reasons as the former sales, on account of inadequacy of the price bid. The order of sale was then again renewed, the land sold to one Lee Holland, and report made thereof at the May term, 1884, of said probate court, and approved. The order of the court approving the sale recites that, "it appearing that said sale was legally and fairly conducted in pursuance of the order of the court and in accordance with the statutes, it is, therefore, ordered that said sale be, and the same is hereby, approved and confirmed, and the said administrator *de bonis non* is ordered to execute, acknowledge, and deliver to the said Lee Holland, a deed in due form of law, conveying to the said Lee Holland all the right, title, and interest of the said deceased in and to said land at the time of his death."

No reason has been suggested to us why the notice given by one administrator of an intended application for an order to sell land of the estate for the payment of debts against it, could not be used by his successor as administrator of the same estate. Nor do we think any exists. It has in effect been so held by this court. *Agan v. Shannon*, 103 Mo. 668.

Moreover, "the order of approval was a final judgment from which an appeal could have been taken and was the judgment of a court having jurisdiction of the cause and over the parties, and is entitled in this collateral proceeding to the same favorable presumptions and intendments that are accorded to the judgments of circuit courts and no more open to collateral attack." *Noland v. Barrett*, 121 Mo. 181, and authorities cited.

The statute of limitations is also invoked by defendants in aid of their title. In order that this defense may be available to them, their possession must

have been hostile, open, notorious, continuous and adverse, as against the true owner, for a period of ten consecutive years. When A. Woody died, his lands descended to his children subject to the dower interest of his wife and the payment of his debts, and there could have been no adverse holding by them, except as against each other, and in this case the holding was in consonance with each other and no one else had or claimed any title thereto, and defendants' holding under them, occupied no better position. *Sherwood v. Baker*, 105 Mo. 472.

It is very true that Mrs. Jane Brown claimed a dower interest in the land as the widow of John Brown, deceased, the grantor of A. Woody, but that claim was subsequently merged into a judgment against his estate in payment of which the land was subsequently sold by his administrator to Lee Holland, to whom the administrator made a deed June 11, 1884, conveying all the interest that deceased had in the land at the time of his death, and from that time subsequent defendants title was adverse to Holland and those claiming title under him and not before; but ten years had not elapsed from that time up to the commencement of this suit. The fact that defendants may have been innocent purchasers and acquired the land in good faith at its full value can make no difference for as was said in *Faran v. Robinson*, 17 Ohio St. 242: "Under our laws, the real estate of a deceased person, subject to the widow's right of dower, is, in the last resort, as much and as truly assets in the hands of his personal representatives for the payment of debts, as his personal property is. His debts are a lien on his real estate; his heirs to whom it descends take it *cum onere*; and whoever buys it from them, does so subject to the application of the rule of *caveat emptor*."

Nor do we think plaintiff, or those under whom he

claims title, guilty of such laches as would preclude him from recovering in this case, as the delay in selling the land was caused largely by the frequent disapproval of the sales of the land by the administrator by the probate court, and the injunctive proceedings by other parties, which fully explained the delay, and was entirely justifiable.

There are other questions of minor importance raised by counsel for defendants in his brief, which we think of but little or no merit, and, therefore, do not pass upon them.

The judgment is affirmed. All of this division concur.