JOEL EWING, etc., Appellant, v. E. E. PARRISH, Admr., etc., Respondent.

St. Louis Court of Appeals, May 17, 1910.

1. **EXECUTORS AND ADMINISTRATORS: Final Settlement: Final Discharge: Powers of Administrator.** An administrator's power ceases after final settlement, pursuant to due notice and approval thereof, accompanied by an order of discharge, so that he cannot thereafter sue as administrator on a demand due the estate, though if the final settlement was approved without an order of discharge, he is still under the control of the probate court, and may sue for the estate.

2. ———: ———: ———: ———: **Right to Sue for Newly Discovered Assets.** Though the judgment of the probate court, on the final settlement of an administrator, provided that the filing of receipts from the distributees should be in full discharge of all funds held by him, where no receipts were filed because the distributees contested the settlement, the administrator continued to be such, so as to authorize him to sue to recover assets of which he had no knowledge at the time of the settlement.

3. ———: **Assets of Estate: Failure to Inventory.** If notes belonged to an estate, their proceeds did not cease to be assets because they were not inventoried or accounted for in the administrator's final settlement, or because the probate court charged him with a note for which they were substituted.

4. **TRUSTS: Resulting Trust: Facts Stated do not Establish.** Plaintiff's intestate sold land, retaining a vendor's lien for the price, and the vendee afterwards borrowed a certain sum, giving a first deed of trust, and paid such amount to intestate, and executed notes secured by a second trust deed for the balance. The land was sold under the first trust deed for default. Plaintiff and the heirs decided not to purchase at the sale to protect the second trust deed, but defendant's intestate, the attorney for plaintiff as administrator, purchased the property at the foreclosure sale with his own money, without plaintiff's knowledge. *Held,* that defendant's intestate did not hold the land, or the proceeds of its resale, as a constructive trustee.

5. **ATTORNEY AND CLIENT: Attorney Purchasing Land Belonging to Client at Trustee's Sale: Trusts.** Where the administrator and heirs decided not to bid in land sold under a

first trust deed in order to protect a second trust deed held by the estate, an attorney for the administrator could buy the land for his own benefit.

6. **TRUSTS: Trust in Land: Oral Declaration: Statute of Frauds.** To declare an express trust in land on a verbal declaration would contravene the Statute of Frauds (section 3416, Revised Statutes 1899), making all declarations of trust of any land void, unless manifested and approved by writing and signed by declarant.

7. ————: **Trust in Personalty: Oral Declaration.** A trust in personalty may be established orally.

8. ————: **Action Against Trustee: Money Had and Received.** An action for money had and received will sometimes lie in favor of the *cestui que trust* against the trustee, but where the trust is disputed and the amount the trustee owes unsettled, the remedy is in equity.

9. **ATTORNEY AND CLIENT: Attorney Purchasing Land Belonging to Client at Trustee's Sale: Action for Profits: Suit in Equity Proper Remedy: Trusts.** Where the attorney for an administrator bought with his own money, without the administrator's knowledge, land sold upon foreclosure of a senior deed of trust, upon the decision of the administrator and heirs not to protect a junior lien held by the estate, an action by the administrator against the attorney for profits made in the transaction on the theory he bought as trustee for the estate could not be established by a demand presented in the probate court, a suit in equity being the proper remedy.

Appeal from Scotland Circuit Court.—*Hon Chas. D. Stewart,* Judge.

AFFIRMED.

*John M. Doran* and *Smoot & Smoot* for appellant.

(1) The appellant complains of the instructions generally and especially instructions Nos. 6 and 9. Instruction No. 6 tells the jury "unless you believe from the greater weight of the evidence in the cause that John B. Mudd at the time he took the Hunt note payable to himself, intended the proceeds arising therefrom to be applied to the benefit of the Pitkin estate, your verdict should be for the defendant." This instruction is clearly erroneous and misleading and not the law. It is not con-

fined to an expressed intention, but to any intention whether expressed or secret. Harvesting Co. v. Chiswell, 58 Mo. App. 471; Coleman v. Roberts, 1 Mo. 97; Brewington v. Mesger, 51 Mo. App. 348. (2) The partnership books of Smoot, Mudd & Wagner, which were admitted over the objections of the plaintiff, were clearly erroneous in this, that if they were entries in favor of the estate of Mudd they were entries in his own interest and were not admissible and this showing there being a transaction between the third parties and the mere declaration of the witnesses were inadmissible. Hutchins v. Railroad, 97 Mo. App. 348.

*E. R. McKee* and *J. M. Jayne* for respondent.

GOODE, J.—To render this case clear, a full statement of the facts is essential, and they were developed on the trial in a way that makes it difficult to ascertain from the record what they are. Much of the evidence put in consisted of testimony given on the trial of another case, wherein the final settlement of plaintiff as administrator was in contest, and many of the questions and answers on the present trial relate to what the witnesses testified at the other trial. Moreover, the testimony is, in many particulars, both vague and contradictory. This proceeding commenced in the probate court by plaintiff, as administrator *de bonis non* of the estate of H. G. Pitkin, presenting a demand against E. E. Parrish, as administrator of the estate of John B. Mudd, deceased, for the amount of three promissory notes signed by Barton Hunt, dated February 18, 1899, bearing seven per cent interest form date, one being for one hundred dollars and the other two for two hundred dollars each, less a credit on them of one hundred dollars. The total amount claimed, principal and interest, is $558. Just when the demand was filed in the probate court is nowhere stated; but the date of the affidavit to the demand shows it was not prior to September

5, 1906. The notes had been executed by Hunt to John B.
Mudd under circumstances which will appear as we pro-
ceed. Plaintiff's decedent, H. G. Pitkin, died in 1895, and
the first letters on his estate were granted to his widow
and son, but afterward plaintiff was appointed adminis-
trator *de bonis non*. In his lifetime, Pitkin had sold a
tract of land containing one hundred and twenty acres
to a man named Morrison and had given the latter a
bond for a deed. Morrison owed the purchase money
secured by a vendor's lien. After the death of Pitkin,
Morrison sought to have the contract of sale specifically
enforced, and the proceeding for that purpose was set-
tled by an arrangement between him and plaintiff, as
administrator, that Morrison should borrow $750 on a
first deed of trust on the land, pay the money to plain-
tiff as administrator, and execute to the plaintiff a prom-
issory note for the balance of the price of the land, or
$520, and secure the note by a second deed of trust.
This plan was carried out, as near as we can gather,
around the year 1896 or 1897. Morrison borrowed
$750 from a man named Burkett and gave a deed of
trust to N. V. Leslie to secure the loan. He turned the
money over to plaintiff and executed a note to plaintiff
for $520, securing the same by a second deed of trust.
The Burkett note was not paid and there was a sale of
the land under the first deed of trust on account of the
default. The right of the present case hinges largely
on what transpired at that foreclosure sale. The ques-
tion arose whether plaintiff ought to protect the second
incumbrance by paying off the Burkett loan or bidding
in the land at the sale by the trustee Leslie, or whether
it was best to let the land go and lose the amount of the
second incumbrance. Plaintiff took counsel with the
Pitkin heirs about the matter, who preferred to lose the
second deed of trust rather than put any money of the
estate in the land or pay off the Burkett incumbrance.
The entire evidence shows the decision reached by plain-
tiff and the heirs was to let the land go, they deeming

that course wiser than to attempt to protect the second incumbrance. As administrator, plaintiff had for his attorneys the firm of Smoot, Mudd & Wagner, and there is evidence tending to prove those attorneys resolved on a different policy, namely, to protect the Pitkin estate from the loss of the second note; but there is no evidence to show there was an understanding between them and plaintiff, as administrator, they should do so. On the contrary, the trend of all the testimony is to prove plaintiff knew nothing about their plan. Mudd bought the land in at the sale by Leslie, the trustee, for $875, being the amount necessary to pay the debt, interest, costs and taxes, as Mudd testified in the other case. The evidence in the present record would support three theories of why Mudd bought the land: First, as said, that he bought it to protect the Pitkin estate; second, that he bought it to enable the Burkett estate to get the amount of its loan, because that loan had been made at the solicitation of Smoot, Mudd & Wagner, and Leslie insisted they were in honor bound to make the land yield enough to discharge it; third, that Mudd bought speculatively and for his own benefit. He testified in the contest over plaintiff's final settlement, he considered the land his own. The sale occurred November 21, 1898. Mudd wished to resell the land and on February 18, 1899, he sold it to Barton Hunt. The circumstances of that sale need to be stated. The firm of Smoot, Mudd & Wagner, the latter acting in the matter, arranged a loan from one Holley, for nine hundred dollars to be secured by a deed of trust. This money was to be turned over to Mudd, and Hunt was to execute to him three notes, one for one hundred dollars and two for two hundred dollars each, secured by a second deed of trust. After these notes had been signed by Hunt, Holley agreed to increase his loan to one thousand dollars, which was turned over to Mudd, who thereupon gave a credit of one hundred dollars on each of the notes Hunt had made

to him. The main question in the case, it will be perceived, is whether Mudd bought in the land at the sale by Leslie for the Pitkin estate, afterwards sold it to Hunt to reimburse himself what cash he was out, and took the Hunt notes, which represented the balance of the purchase price, for the benefit of the Pitkin estate. But other questions are involved. Plaintiff had submitted his final settlement as administrator to the probate court in 1899, a fact we ascertain from the opinion of the Kansas City Court of Appeals in Ivy v. Ewing, 120 Mo. App. 124, 96 S. W. 481. Though said final settlement is the fact principally relied on by the defendant to defeat plaintiff's demand, the date when it was filed is not shown. The probate court of Scotland county entered an order approving the final settlement and in it allowed plaintiff a credit for the Morrison note secured by the second deed of trust, which had been inventoried by him. The credit was allowed on the theory the note had been rendered worthless by the foreclosure of the Burkett deed of trust. The Pitkin heirs appealed from the judgment of the probate court approving the final settlement, to the circuit court of Scotland county, from whence the cause went on change of venue to the circuit court of Schuyler county. The exceptions of the heirs went not only to the credit to plaintiff of the amount of the Morrison note, but also to a credit of twenty-five hundred dollars allowed him on acount of another matter with which we are not concerned. The circuit court of Schuyler county refused to allow plaintiff credit for the amount of the Morrison note and ordered him to be charged with it in his final settlement. This is said in defendant's brief to have been done because the circuit court deemed plaintiff had been remiss in not taking steps to save said item to the estate; but in point of fact the court gave no reason for its ruling, further than to say, that considering the value of the land on which the two incumbrances had been placed, plaintiff should be

148 App—32

charged with the item. The judgment of the Schuyler County Circuit Court was submitted to by plaintiff as regards said item, but the Pitkin heirs appealed to the Kansas City Court of Appeals as to the twenty-five hundred dollars credit which the Schuyler court allowed, following the ruling of the Scotland county probate court, and as to this credit the court of appeals reversed the judgment of the Schuyler County Circuit Court. What is material to the present controversy is, that the judgment of the circuit court of Schuyler county, charging plaintiff with the amount of the Morrison note, was certified to the probate court of Scotland county, which, at the September term, 1905, entered a judgment wherein it recited the presentation of the certified copy of the order of the circuit court of Schuyler county approving the final settlement of Ewing as administrator *de bonis non* of the Pitkin estate, and showing a balance due from said administrator amounting, principal and interest, to $5,895.70. The probate court of Scotland county then proceeded in its judgment on the final settlement, to enumerate certain items of cost the Pitkin estate owed and which ought to be deducted from said sum before distribution, found $5,162.57 was the net amount left to be distributed after the deduction, ordered distribution of said sum among the heirs, designating how much each should receive, and concluded by saying the administrator should take the receipts of the heirs for the respective shares "and file the same with this court, and when so filed to be in full discharge of all funds in the hands of said administrator." It was testified in the present case by J. D. Smoot, attorney for plaintiff, that though plaintiff was ready and willing to pay everything as administrator and had been ready to do everything required, "they (meaning, we understand, the heirs) do not seem to want it."

Going back now to the notes Hunt made to Mudd, it appears Hunt paid the amount of them to Mudd by check dated September 29, 1902, or three years before

the judgment of the probate court approving the final settlement of plaintiff, and more than four years before this demand was presented by plaintiff against the Mudd estate. The date of Mudd's death is not shown, but it was, of course, subsequent to the date when the notes were paid. Smoot testified Mudd said to him he (Mudd) had collected the Hunt notes and held the money for the Pitkin estate; but would retain it until after the contest over plaintiff's final settlement was decided in the Kansas City Court of Appeals; that there was no question the notes belonged to the estate and stood in lieu of the Morrison note; that in the last conversation between the witness and Mudd, the latter talked about having the money ready to turn over to Ewing. The evidence relied on to prove the notes belonged to the Pitkin estate was the testimony of Smoot and Wagner, the effect of which is that the land was bid in by Mudd to protect said estate and the notes to Hunt were afterwards taken in his name for the benefit of the estate. Some of the evidence tended to prove the sale of the land to Hunt after it had been bid in by Mudd, was negotiated by Wagner; whereas other testimony tended to prove Mudd made the sale to Hunt himself. The verdict having been for defendant on the appeal, plaintiff complains of instructions given to the jury; but the assignments of error will not be examined, for, in our opinion, the proceeding cannot be maintained, and if plaintiff is entitled to redress, he should seek it by another remedy.

A main contention for defendant is, plaintiff cannot maintain the proceeding because his final settlement as administrator of the Pitkin estate had been approved long before he filed the demand against the Mudd estate. Whatever the law is elsewhere, in this State a man's power as administrator ceases when he has submitted a final settlement to the probate court pursuant to due notice, and his settlement has been approved and he ordered discharged. Thereafter he can no longer act in

his representative capacity; hence cannot sue for a demand due the estate and not previously collected. [Goebel v. Foster, 8 Mo. App. 443; State v. Stephenson, 12 Mo. 162; Grayson v. Weddle, 63 Mo. 523; Melton v. Fitch, 125 Mo. 281, 28 S. W. 612.] But if a final settlement was filed and approved without being accompanied or followed by an order discharging the administrator, it has been held he is still under the control of the probate court and may represent the estate. [Rugle v. Webster, 55 Mo. App. 246; Garner v. Tucker, 61 Mo. 427; Rogers v. Johnson, 125 Mo. 202, 28 S. W. 635.] The extent of his power to act after approval of the final settlement, and subsequent to the term at which it was rendered, has not been ascertained definitely by decisions. It has been held he may execute a deed to lands previously sold and that if an administrator *de bonis non* is appointed, the presumption will be the estate had not been fully administered, and the appointment will be valid against collateral attack, and, perhaps, his competency to perform other duties has been adjudicated. [Cases cited last.] We perceive no reason why he may not collect newly discovered assets, and, if need be, sue to collect them. The judgment of the probate court in the final settlement of plaintiff contained no full order of discharge, though it declared the filing of the receipts from the distributees should be in full discharge of all funds in plaintiff's hands. There is no proof these receipts were ever filed so as to work a discharge even to that extent. On the contrary, the testimony of Smoot tends to prove plaintiff had been unable to settle with the distributees who were contesting his settlement in some manner. These being the facts, it appears plaintiff had not ceased to be administrator and, therefore, might recover assets not included in his previous settlement and of the existence of which he was unaware when he settled. [Woerner's Admr. Law., secs. 506 and 570 to 572 inc.] It might be argued that as plaintiff was charged with the amount of the Morrison

note in the final settlement, which became a final judgment when approved, and as the theory of the present proceeding is that the Hunt notes took the place of the Morrison note, the Pitkin estate has no interest in the collection of the Hunt notes by plaintiff, as the amount of them would go only to reimburse him for the debt of the Morrison note. If the Hunt notes ever belonged to the Pitkin estate, their proceeds are none the less assets of it because they were not inventoried by plaintiff or taken account of in his settlement. Neither are they any the less assets because the probate court, in ignorance of the facts, held plaintiff liable for the Morrison note for which, in a sense, they were substituted.

The fault of this proceeding lies deeper. Plaintiff is seeking to collect in the ordinary way a money demand from the Mudd estate as a debtor of the Pitkin estate. But if anything is due the latter estate from the Mudd estate, the liability, in our opinion, did not arise in such a way as to make it recoverable in this kind of proceeding. It could only have arisen from Mudd being trustee for plaintiff as administrator, first of the land he bought in at the foreclosure sale under the Burkett deed of trust, and secondly of the notes he took from Hunt when the land was sold to the latter. In other words, to lay the Mudd estate liable for the proceeds of those notes, a trust must be established wherein Mudd was the trustee for plaintiff as administrator. Moreover, this trust would necessarily be an express and not a resulting or constructive trust. Plaintiff advanced no money to buy in the land at the sale under the Burkett deed of trust when Mudd acquired the title. Hence a resulting trust did not arise on that ground, and the facts on which other classes of resulting trusts may be raised are so unlike those of the case at bar that it is useless to elucidate further why there was no such trust. See 15 Ency. Law (2 Ed.), pp. 1124 *et seq.* We find no facts upon which Mudd could be held trustee of a constructive trust for the benefit of plaintiff as admin-

istrator.  As stated, plaintiff and the Pitkin heirs had
resolved to make no effort to bid in the land or to
protect the second incumbrance, but to let the land go
to whomsoever bought at the sale under the Burkett
deed of trust.  Therefore Mudd, though he was plain-
tiff's attorney, was free to buy at said sale for his own
benefit; and if he took the land as trustee, or after-
wards held the Hunt notes as trustee, it was by virtue
of an arrangement by the members of the firm of Smoot,
Mudd & Wagner, made of their own motion, to protect
plaintiff as administrator by buying the land for his
benefit, and thereby prevent him from losing the amount
of the Morrison notes.  To enforce liability on this
theory, by holding Mudd took the land as trustee and as
such must account for the proceeds of it left after he
was reimbursed, it is necessary to raise an express trust
in land upon a verbal declaration or agreement, thereby
contravening the Statute of Frauds.  [R. S. 1899, sec.
3416; Woodford v. Stevens, 51 Mo. 443; Mansur v. Wil-
lard, 57 Mo. 347.]  But Smoot testified Mudd declared
to him after the land had been resold to Hunt, that he
(Mudd) held the Hunt notes, and when they had been
paid, declared again he held their proceeds for the bene-
fit of plaintiff as administrator.  A trust in personal
property may be established orally.  [Harris Banking
Co. v. Miller, 190 Mo. 640, 89 S. W. 629.]  We decline to
decide further on the evidence before us that Mudd
should be held a trustee of an express trust in respect
of the Hunt notes, and decide only that the question
cannot be determined in this proceeding.  An action for
money had and received will sometimes lie in favor of a
*cestui que trust* against the trustee.  [Johnson v. Smith's
Admr., 27 Mo. 591; Clifford Banking Co. v. Comm. Co.,
195 Mo. 262, 94 S. W. 527; Ziederman v. Molasky, 118
Mo. App. 106, 94 S. W. 754.]  Nevertheless, where the
trust is disputed and the amount the trustee owes unset-
tled, thereby putting in issue other questions than the
right of the *cestui que trust* to an ascertained balance

from the trustee—where, in short, the trust itself must be established—the remedy ought to be in equity. See for full examination of the subject, Johnson v. Johnson, 120 Mass. 465. Even in instances when, the trust being admitted, an action for money had and received is tolerated, this is done because the action is regarded as equitable in its nature. It is clear to our minds that a mere formal demand presented in the probate court is not the kind of proceeding in which the present controversy, considering the scope of it, can be properly investigated. [Nester v. Ross, Est., 98 Mich. 200.] The cited case was a demand preferred in a court of probate for damages for breach of a contract wherein the decedent had agreed to sell timber lands, or to manufacture the timber on the lands, and from the proceeds pay certain debts of the plaintiff Nester; and after said debts were paid and expenses, the remainder of the lands and timber were to be divided in common by the parties. It was held the contract was not only security for the debts to be paid out of the proceeds of the lands and timber, but that it also created a trust in favor of the claimant Nester and the only forum competent to settle the rights of the parties was a court of equity. While the facts of that case are not identical with those at bar, they are sufficiently analogous for the opinion to shed light on the question of law we are to decide and point to the correct decision. Quite in point is Norton v. Ray, Excx., 129 Mass. 230, where it appeared the defendant's testator, Isaac C. Ray, bought at a sale a dwelling house for the plaintiff at the latter's request and with his money, and had taken a deed in the name of himself, Isaac C. Ray, but had afterward signed a paper acknowledging the purchase was for Norton's benefit, and that the premises were held for and would be conveyed to the latter upon request. Ray conveyed to Norton's wife, who lived apart from Norton, and the action was against Ray's estate for the value of the premises. There, though the trust was not disputed, it

was held the only remedy was in equity; that an action for money had and received would not lie; citing Johnson v. Johnson, 120 Mass. 465. In point, too, is Davis' Admr. v. Coburn, 128 Mass. 377, where the plaintiff's decedent had sent nine hundred dollars to the defendant to keep and invest for the decedent, and that the defendant received the money and kept it in his own name, but mingled it with his own money. It appeared no account had been rendered of the trust and no settlement of the amount due under it had been made. The court said that under those circumstances the remedy was by bill in equity, as an action at law will not lie in favor of a *cestui que trust* against the trustee while the trust remained open.

The judgment is affirmed. All concur.