Moody v. Peyton.

---

MOODY *et al.* v. PEYTON *et al.*, *Appellants*.

Division Two, October 7, 1896.

1. **Administration:** JUDGMENT: HEIRS: REALTY: PERSONALTY. A judgment recovered against an administrator is, in the absence of fraud, equally conclusive upon the administrator and the heirs, both as to the personal property and the realty belonging to the estate of the decedent.

2. **Judgment:** IMPEACHMENT: FRAUD. A judgment can only be impeached upon the ground of fraud by satisfactory evidence that such impeaching fraud occurred in the *very concoction* or *procurement* of the judgment.

3. **Administration:** JUDGMENT OF PROBATE COURT: HEIRS: RES JUDICATA. A judgment of allowance by the probate court on a note given by a decedent for the purchase price of land is conclusive on the heirs in an action by the vendor to enforce his lien.

4. ———: ———. A judgment of allowance by a probate court possesses the same conclusive force as the judgments of other tribunals.

*Appeal from Cass Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

*Burney & Burney* and *Noah M. Givan* for appellants.

(1) The probate court has not equitable or chancery jurisdiction, and could not, and did not, adjudicate the question of plaintiffs' right to enforce a vendor's lien to the property in controversy. *Ross v. Julian*, 70 Mo. 209; *Church v. McElhinney*, 61 Mo. 540; *Church v. Roberson*, 71 Mo. 326; *Patterson v. Booth*, 103 Mo. 402; *Boston v. Murray*, 94 Mo. 175; *In re Elliott v. Wilson*, 27 Mo. App. 218; *Butler v. Lawson*, 72 Mo. 244; *State ex rel. v. Jones*, 53 Mo. App. 207; *Owens v. Link*, 48 Mo. App. 534; 1 Woerner's Law of Administration, sec. 149. (2) Plaintiffs' plea of *res adjudicata* is not good, in that it does not allege that the judgment of the probate court was rendered upon the same identical matters now in litigation. *Dickey v. Heim*, 48 Mo. App. 114; 3 Chitty's Pleading, 929; 2 Van Fleet's Former Adjudications, p. 1327; *Cutler v. Cox*, 2 Blackf. 178; 18 Am. Dec. 152; *State ex rel. v. Page*, 63 Ind. 209; *Secor v. Sturgis*, 16 N. Y. 548; *Smith v. Sherwood*, 4 Conn. 276; *Abbey v. Goodwin*, 7 Conn. 377. Nor that the court had jurisdiction of the matters involved in this suit. Judgment does not conclude matters over which no jurisdiction existed. 1 Van Fleet's Former Adj., p. 95; 1 Van Fleet's Coll. Attack, secs. 58–69; *Embury v. Conner*, 3 N. Y. 511; 55 Am. Dec. 325; *State to use v. Brooke*, 29 Mo. App. 286; authorities under point 1. Nor that the parties to the suit were identical. *Wright v. Griffey*, 147 Ill. 496; 37 Am. St. Rep. 228; *Jones v. Vert*, 121 Ind. 140; 16 Am. St. Rep. 379. (3) It is well settled that if the merits of the matters in dispute were not passed upon, the judgment is no bar to another action, and when the record does not affirmatively or positively show what was in issue, and also

what was passed upon and determined, parol evidence may be resorted to.    Even if the record shows what was in issue, but does not show what was passed upon and determined, parol evidence should be heard. *Spradling v. Conway*, 51 Mo. 54; *Wells v. Moore*, 49 Mo. 229; *Wright v. Salisbury*, 46 Mo. 26; *Hickerson v. Mexico*, 58 Mo. 65; *St. Joseph v. Railroad*, 116 Mo. 645; *Snorgrass v. Moore*, 30 Mo. App. 238; *Welch v. Phillips*, 16 Neb. 515; *Althorp v. Beckwith*, 14 Ill. App. 628; *Kidd v. Laird*, 15 Cal. 161; *Carter v. Hannah*, 2 Ind. 45; *Smith v. Sherwood*, 4 Conn. 276; *Howard v. Kimbal*, 65 Me. 308; *Watts v. Watts*, 160 Mass. 464. (4) The defendants, except administrators Blevins and Dolan, were not parties to the proceeding in the probate court; they are not privies to the administrators, and did not bear such a relation to them as to be bound by the result.    12 Am. and Eng. Ency. of Law, p. 91; 21 same, pp. 142, 154; *State v. Lineberger*, 59 Pa. St. 313; *Garnett v. Macon*, 6 Call (Va.), 308, and citations; *Armstrong v. Poppenheimer*, 19 S. W. Rep. (Tex.) 520; Freeman on Judgments [3 Ed.], sec. 163; *Cornwell v. Orton*, 126 Mo. 355; Woerner on Administration, secs. 466, 579; *Watts v. Taylor*, 80 Va. 627; *Curry v. Peebles*, 83 Ala. 225; *Platt v. Platt*, 105 N. Y. 488; *Ross v. Julian*, 70 Mo. 209.    (5) In order to bind a party on the score of privity, he must claim through or under a party to the action, and this claim must accrue by succession and after the institution of the action.    Freeman on Judgments [3 Ed.], sec. 162; *Henry v. Woods*, 77 Mo. 281; *Koontz v. Kauffman*, 31 Mo. App. 397; 2 Black on Judgments, sec. 549.

*J. H. Kyle* and *R. T. Railey* for respondents.

(1) Upon this state of the record we insist that the judgment of the probate court was absolutely con-

clusive against these appellants as to the validity of respondents' claim against the said estate. The heirs, if dissatisfied with the allowance, had the right, under section 285 of the Revised Statutes of 1889, to appeal from said judgment of the probate court. That portion of the statute applicable to the heirs is as follows: "And the right of appeal herein provided for shall extend to any heir, devisee, legatee, creditor, or other person having an interest in the estate under administration." It is therefore contended that, as the same issues were presented in the probate court, which are presented here, not only are the administrators, but the heirs likewise, concluded by said judgment. Especially is this so, as the judgment of the probate court recites affirmatively upon its face that the evidence was heard as to the defenses set up by defendants' answer. Again we insist, that not only are the heirs and administrators bound by the proceeding, but as the real estate only descends to the heirs subject to the payment of debts, and as it stands admitted upon the face of this record that the estate is insolvent, outside of respondents' claim, the heirs can have no interest to be affected by this litigation. (2) Under the constitution and statutes of this state, original jurisdiction is conferred upon the probate court to hear and determine all demands against the estates of decedents. The probate court is a court of record under the laws of this state. Its proceedings, so far as the validity of allowance and classification of demands is concerned, are just as conclusive as that of the circuit court or supreme court. It is an elementary rule of law that everything is presumed to be within the jurisdiction of a court of general jurisdiction, and wherever jurisdiction affirmatively appears upon the face of the record of an inferior court, the proceedings of the latter are just as conclusive as the judgment and proceedings of

the circuit court or supreme court. *State v. Evans*, 83 Mo. 322, and cases cited; *Jeffries v. Wright*, 51 Mo. 215; *Williams v. Mitchell*, 112 Mo. 309; *Lingo v. Burford*, 112 Mo. 155; *Leonard v. Sparks*, 117 Mo. 116; *Johnson v. Beazley*, 65 Mo. 264; *Noland v. Barrett*, 112 Mo. 189; *Macey v. Stark*, 116 Mo. 494; *Camden v. Plain*, 91 Mo. 120; *Colvin v. Six*, 79 Mo. 200; *Rogers v. Johnson*, 125 Mo. 213. (3) Not only are the administrators, Dolan and Blevins, conclusively bound by the judgment of the probate court but the other defendants are equally bound. If the heirs were dissatisfied with the allowance, they had the right to appeal from the judgment of allowance to the circuit court, and there have the cause tried *de novo*. R. S. 1889, secs. 285, 286, 287, 288, and 292. The right of appeal on the part of the heirs, appears for the first time in the revisions of 1889, *supra*. See R. S. 1879, sec. 292. (4) The law is well settled in this state that the probate court in respect to the allowance and classification of demands against the estate of a decedent has ample jurisdiction, and its judgments thereon, in collateral proceedings, import the same absolute verity as do judgments of the circuit court. R. S. 1889, secs. 191, 3397; *In re Estate of Elliott*, 98 Mo. 384; *Cooper v. Duncan*, 20 Mo. App. 359, and cases cited; see, also, authorities cited under proposition 2 of this brief. *Hoffman v. Hoffman's Ex'r*, 126 Mo. 439.

SHERWOOD, J.—Proceeding to enforce vendor's lien, on the following described property in Harrisonville, Missouri, to wit: The east half of blocks number 185 and 186, and ten feet off the north side of block number 193.

Plaintiff, as the guardian and curator of his son, by order of the probate court, and on his own behalf, sold the land aforesaid to Sarah E. Peyton for $4,000,

$100 of which she paid down, and for the balance gave her promissory note, receiving in return a title bond and was placed in possession of the land, which she continued to occupy from June 1, 1891, till August of that year, when she died, and since that time the premises have been occupied by her children up to 1893, and since then her administrators have rented the same, such premises having been inventoried by such administrators as the property of Sarah E. Peyton's estate.

In 1892 the note aforesaid was allowed in the probate court of Cass county. On its presentation, however, for allowance, resistance thereto was made by the administrators, who filed a formal answer to the effect that Mrs. Peyton was, by reason of sickness and otherwise, incapable of making a contract at the time she contracted for the premises and gave her note therefor; that the adult plaintiff took advantage of her weakness and diseased condition and induced her to purchase the land and to sign the note therefor, and that the title to the land was invalid, etc.

To this answer a reply was filed and the probate court found the issues for the plaintiff in that suit, and allowed the note as already stated.

From this judgment of allowance the administrators appealed to the circuit court, where they dismissed their appeal in December, 1892, when the judgment of allowance was affirmed.

The answer of the administrators in the present proceeding is substantially the same as that filed in the probate court, and the children and heirs of Sarah E. Peyton also joined in said answer, in which defendants offered to rescind the contract and to surrender possession of the premises, etc.

The reply of plaintiffs to this answer was in substance the same as their former reply, and also pleaded

as *res judicata* the judgment of allowance on the note in the probate court.

From the records of the probate court offered in evidence herein, the following appeared: "The hour of 9 o'clock A. M. arrived, and come also plaintiffs and defendants by their attorneys, and the trial of this cause is resumed. The court having heard the evidence on behalf of defendants, introduced to sustain the issues in their answer; and considered plaintiffs' demurrer to the same, doth sustain said demurrer and order that demand of plaintiffs be allowed, $4,232.80, and assign to class 5; interest eight per cent."

Plaintiffs in their pleadings and on the hearing tendered a deed for the premises.

It was alleged in the petition that no part of the note or judgment in the probate court had ever been paid, and that the estate of Sarah E. Peyton was insolvent. The latter allegation was not contradicted in the answer, and, besides, was shown to be true. Judge Glenn (the probate judge) testifying at the trial respecting the insolvency of the estate: "My opinion is that it will not pay out, leaving out this claim; that it will fall some short." And it was also admitted at the trial no part of the note or judgment thereon had ever been paid.

On the foregoing premises the circuit court found for plaintiffs, and entered a decree enforcing a lien against the land, which was all that was asked in the petition.

As will have been observed, this controversy hinges on the point whether the judgment of allowance on the note in the probate court bound the heirs of the decedent, Sarah E. Peyton.

The authorities cited on behalf of defendants established that a judgment against an administrator is conclusive as to the *personal* estate, but only *prima facie*

as to the *realty*, and that the heir has a right to his day in court to dispute the correctness of the demand allowed against the administrator. The reason given for this is that there is no privity between the administrator and the heir.

In a recent work, however, it is said: "So far as the personal estate of a decedent is concerned, it does not technically descend to the heirs, but passes to the administrator or executor, through whom they take as distributees. Hence, in regard to that part of the estate, the privity between them and him is complete." 2 Van Fleet, Former Adjud., sec. 465.

In some of the states it is held that a judgment against an administrator is no evidence of a debt as against the heirs in a proceeding to sell land to make assets with which to pay it. In others, a majority, it is held that such judgment is *prima facie* evidence against the heirs.

But in North Carolina, it has been ruled that such judgment, in the absence of fraud or collusion, is *conclusive* on the heirs as well as the administrator, as *establishing* the debt, and this being established, subsists in full force for subjecting *all* the estate of a debtor, *real as well as personal*, the former after the latter, to the payment of his liabilities. *Speer v. James*, 94 N. C. 417; *Proctor v. Proctor*, 105 N. C. 222.

And the rule is that when a judgment is sought to be impeached on the ground of fraud, that such impeachment can only occur when satisfactory evidence is offered that such impeaching fraud occurred in the very *concoction or procurement* of the judgment. Nothing short of this will answer. Bigelow on Fraud, pp. 86, 87, 88, 90, 94, 95, 636; *Payne v. O'Shea*, 84 Mo. 129; *McClanahan v. West*, 100 Mo. *loc. cit.* 320; *Oxley Stave Co. v. Butler Co.*, 121 Mo. *loc. cit.* 630, and cases cited; *Nichols v. Stevens*, 123 Mo. *loc. cit.* 116.

In this case, as there was no attempt made to prove that fraud was exhibited as above indicated, therefore the evidence was properly rejected, on this consideration alone. The ruling in North Carolina on the point in hand commends itself to our approval, and we indorse it in blank.

There is no sound reason, in our opinion, in holding that a judgment recovered against an administrator should be conclusive on the *heir* as to the *personalty*, but worthless or only *prima facie* evidence against him when it comes to the *realty*. How one and the same judicial determination could have two such distinct probative effects and consequences, as to be *conclusive* as to one species of property, and only *prima facie* as to another, both belonging to the same estate, is truly remarkable. At common law the reason a judgment bound the estate under administration, to wit, the *personalty*, but did not bind the heir at law of the real estate, was *because the real estate constituted no part of the assets under administration. Nichols v. Day*, 32 N. H., *loc. cit.* 138.

But here in this state, every particle of property whereof a party dies seized, or possessed (with certain exceptions not necessary to be noted now) whether *real, personal,* or *mixed, constitutes the assets of the estate,* and has to be inventoried and sold as such whenever occasion demands, and therefore, the reason of the rule existing at common law already mentioned, no longer exists, and *cessat ratio cessat ipsa lex.*

As is well said in *Faran v. Robinson*, 17 Ohio St. 242 (cited approvingly by BURGESS, J., in *Rogers v. Johnson*, 125 Mo. 216), "Under our laws, the real estate of a deceased person, subject to the widow's right of dower, is, in the last resort, as much and as truly assets in the hands of his personal representatives for the payment of debts, as his personal property is."

And, consequently, a judgment which establishes a debt against an estate, no matter out of what assets it must ultimately be paid, should be as conclusive on the heir as on the administrator, and we hold that it is as conclusive.

And in this state it is to be noted, also, that no judgment is rendered against an administrator when a claim is allowed. The judgment of allowance and classification is rendered *against the estate.* It is, in all of its essential incidents and consequences, *a judgment in rem* (1 Woerner, Am. Law Administ., 337, 338; 2 *Ibid.* 1030), which, like other judgments *in rem*, in similar circumstances, is binding on the whole world, and, because of this also, the same consequences can not follow such impersonal judgment as would follow at common law a judgment *de bonis testatoris.*

Again, among the reasons mentioned in the authorities cited on behalf of defendants is, that a judgment should not bind a person not a party to the suit, who can not offer testimony, adduce evidence in opposition to the claim, nor appeal from the judgment. None of these reasons has any force in the case at bar, because the legislature has made ample provision for this class of cases as follows, to wit: "If any executor, administrator, *heir*, or creditor of an estate shall, within four months after any demand shall have been allowed, file in the office of the probate court the affidavit of himself or some credible person, stating that the affiant has good reason to believe, and does believe, that such demand has been improperly allowed, the court shall vacate such order of allowance and try the matter anew, and allow or reject such demand, as shall be right; and if, upon such new hearing, such demand shall be allowed, it shall be classed and paid as if such new hearing had not been granted." Sec. 213, R. S. Mo. 1889. Under the statute as it stood formerly (sec-

tion 216, R. S. 1879) only an *executor or administrator* was allowed to file such an affidavit.

Section 285, *Ibid.*, makes provision for appeals from the probate court to the circuit court in a large number of cases, and winds up by saying: "And in all other cases where there shall be a final decision of any matter arising under the provisions of this chapter. *And the right of appeal herein provided for shall extend to any *heir*, devisee, legatee, creditor, or other person having an interest in the estate under adminis- tration." This is a new clause added to the above section from the asterisk downwards, and first appeared in the statutes of 1889. Susequent sections provide that on such appeal being taken, there should be a trial *de novo*.

It thus appears very clearly that the legislature intended that a judgment of allowance entered by a probate court should possess the same conclusive force as the judgments of other tribunals, and this has always been the doctrine of this court respecting such judg- ments of probate courts.

Heirs, having the right of setting aside an order of allowance, and then having done so, having the right of a trial anew, and having also the right of appeal whether they move to set aside or not, they evidently do not fall within the reason of the doctrine announced in the authorities cited for defendants. Of course there might be cases of fraud or collusion, in the *very pro- curement* of an allowance, and in such cases, doubtless the power of a court of equity could successfully be invoked, but no such case is here made by the pleadings.

As to the description of the land, it is admitted to be correct in the answer, and on the trial it was stipu- lated between the parties that the $3,900 note described in the petition was given for the balance of the pur- chase money from S. E. Peyton, deceased, for the real

estate sought to be charged in the petition with the vendor's lien. In such circumstances, it is not seen how, in the face of their answer and stipulation, defendant's could claim that plaintiffs were attempting to charge with a vendor's lien, land which was not sold to Mrs. Peyton. And it is not apparent, inasmuch as plaintiffs do not seek a personal judgment against defendants, and inasmuch, also, as the estate of Mrs. Peyton is hopelessly insolvent, what concern defendants can possibly have whether plaintiffs seek to enforce their lien on the right land or not, or whether they embraced all of the land in the suit to enforce their lien.

It is unnecessary to notice other points assigned for error. Decree affirmed. All concur.