UNITED STATES v. SPOHRER.

(Circuit Court, D. New Jersey. January 14, 1910.)

1. ALIENS (§ 71½*)—NATURALIZATION—SUIT TO CANCEL CERTIFICATE.
    Naturalization Act June 29, 1906, c. 3592, § 15, 34 Stat. 601 (U. S. Comp. St. Supp. 1909, p. 485), which authorizes a suit by the United States to cancel any certificate of naturalization on the ground of fraud or that it was illegally procured, is constitutional, and under it the United States may maintain a suit in a federal court to cancel a certificate issued by a state court under either that or a former statute on the ground of fraud, in that the allegation and evidence that the applicant had resided in the United States for five years was untrue.
    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 71½.*]

2. ALIENS (§ 71½*)—NATURALIZATION—SUIT TO CANCEL CERTIFICATE—DEFENSES.
    The defense of laches cannot be pleaded against the United States in a suit to cancel a naturalization certificate.
    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 71½.*]

Petition by the United States against Joseph Spohrer, alias Joseph Sporr, to cancel a certificate of naturalization. On demurrer to petition. Demurrer overruled.

John B. Vreeland, U. S. Dist. Atty.
Sommer, Colby & Whiting and Charles L. Williams, for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CROSS, District Judge. On the 9th day of July, last, the government filed a petition in this court for the cancellation of a certificate of naturalization, with the decree relating thereto, issued October 24, 1884, to Joseph Spohrer, by the court of common pleas of Essex county, in the state of New Jersey. The substance of the petition is that Spohrer, being an alien and a subject of the Emperor of Germany, procured his certificate of naturalization by fraud, in that it was not true, as alleged, that he was a minor under the age of 18 years when he arrived in the United States, or that at the time of his application to be admitted to citizenship he had resided within the United States 3 years next preceding his arriving at the age of 21 years, or that at the time of his said application he had resided in the United States 5 years, including the 3 years of his minority, and that consequently his certificate of citizenship was obtained from said court by fraud.

Spohrer, the respondent, has demurred to the petition of the government, alleging the following grounds: That this court is without jurisdiction to grant the relief prayed for, because the fraud alleged in its petition appears by the petition itself not to have been fraud, collateral or extrinsic, to the matter adjudicated upon by the court of common pleas of the county of Essex in the proceedings had before said court which resulted in admitting the demurrant to the rights, privileges, and immunities of a free citizen of the United States; that the said decree of the said court had become final, and cannot now be opened by this court; and that the United States is barred by reason of its laches from the relief prayed for in and by its petition.

This suit is instituted under section 15 of the naturalization law of June 29, 1906 (34 Stat. 601, c. 3592 [U. S. Comp. St. Supp. 1909, p. 485]). The pertinent parts of said section follow:

"That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured. In any such proceedings the party holding the certificate of citizenship alleged to have been fraudulently or illegally procured shall have sixty days personal notice in which to make answer to the petition of the United States; and if the holder of such certificate be absent from the United States, or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the state or the place where such suit is brought. * * * The provisions of this section shall apply not only to certificates of citizenship issued under the provisions of this act, but to all certificates of citizenship which may have been issued heretofore by any court exercising jurisdiction in naturalization proceedings under prior laws."

The matter being before the court upon demurrer, the allegations of the petition are to be taken as admitted. The question presented, therefore, is whether the rights and privileges of citizenship can be obtained and held by one who, without any right under the law to be naturalized, nevertheless by means of fraud and perjury of a gross character has been able successfully to impose upon the court and induce favorable action upon his petition. That the respondent com-

mitted a fraud upon the court, upon the naturalization law, and upon the United States, under the admitted facts, cannot be gainsaid.

The power of naturalization is by the Constitution vested solely in Congress. That body, and that alone, can determine when, under what circumstances, by what court, and in favor of whom the power shall be exercised. At the time the respondent applied for naturalization, section 2170 of the Revised Statutes (U. S. Comp. St. 1901, p. 1333) was in force, and provided that:

"No alien shall be admitted to become a citizen who has not, for the continued term of five years, next preceding his admission, resided within the United States."

Section 2165 (U. S. Comp. St. 1901, p. 1329) provided that:

"An alien may be admitted to become a citizen of the United States in the following manner, and not otherwise."

Such being the law, no court was authorized knowingly to naturalize any person who had not continuously resided therein for five years next preceding his admission to naturalization. This was made a jurisdictional fact. Action taken by a naturalization court in contravention of that provision would be open to direct, although not to collateral, attack, unless the proceedings were irregular upon their face. It should be borne in mind that in naturalization proceedings there are no parties or attorneys of record, nor is any process issued, or any one brought into court. In other words, it is not a controversial proceeding. In the Case of Stern, 13 Ops. Atty. Gen. 376, in dealing with a naturalization matter, the Attorney General said:

"But recitations in the record of matters of fact are binding only upon the parties to the proceedings and privies. The government of the United States was no party, and stands in privity with no party, to these proceedings, and it is not in the power of Mr. Stern by erroneous recitations in ex parte proceedings to conclude the government as to matters of fact."

An alien friend is offered under certain conditions the privilege of citizenship. He may accept the offer and become a citizen upon compliance with the prescribed conditions, but not otherwise. His claim is of favor, not of right. He can only become a citizen upon and after a strict compliance with the acts of Congress. An applicant for this high privilege is bound, therefore, to conform to the terms upon which alone the right he seeks can be conferred. It is his province, and he is bound, to see that the jurisdictional facts upon which the grant is predicated actually exist, and if they do not he takes nothing by his paper grant. Fraud cannot be substituted for facts. No question is made in this case, and none could be, that the court which granted the certificate of naturalization to the respondent was duly authorized by Congress to act in matters of naturalization.

Counsel for the respondent, however, contends as follows:

"That the court of common pleas had jurisdiction to pass the decree of naturalization; that in so doing it acted as a state court; that such decree amounts to a judgment, and is entitled to all the sanctity and protection of a judgment; that a judgment of a court, after the term at which it was rendered has passed, cannot be opened up or vacated, either by the court itself which tendered the decree, or by another court acting on equitable principles, except for fraud which is extrinsic or collateral; and that, inasmuch as the

fraud complained of in this case is not extrinsic or collateral, the judgment or decree cannot, upon common-law principles, be set aside."

In support of their view they cite an extract from an opinion by Mr. Chief Justice Marshall, in Spratt v. Spratt, 4 Pet. 393, 407, 7 L. Ed. 897, in which he says:

"The various acts upon the subject submit the decision on the right of aliens to admission as citizens to courts of record. They are to receive testimony, to compare it with the law, and to judge on both law and fact. This judgment is entered on record as the judgment of the court. It seems to us, if it be in legal form, to close all inquiry, and, like every other judgment, to be complete evidence of its own validity."

In that case, however, the decree of naturalization was attacked collaterally, and because of that fact the decision is deemed not to have controlling force in the present controversy. The case most relied upon, however, by the respondent in support of his position, is United States v. Throckmorton. 98 U. S. 61, 25 L. Ed. 93, in which, as stated by the court in its opinion:

"The object of the bill is to have a decree of the court setting aside and declaring to be null and void a confirmation of the claim of W. A. Richardson under a Mexican grant to certain lands, made by the Board of Commissioners of Private Land Claims in California on the 27th day of December, 1853, and also the decree of the District Court of the United States, made February 11, 1856, affirming the decree of the Commissioners, and again confirming Richardson's claim. The general ground on which this relief is asked is that both these decrees were obtained by fraud."

The bill in that case was filed more than 20 years after the rendition of the decree which it sought to have annulled. The decision, however, was not put upon the ground of laches, the court stating that the government was not bound by the statute of limitations as an individual would be, but upon the ground that fraud for which a bill to set aside a judgment or decree between the same parties, rendered by a court of competent jurisdiction, will be sustained, is that which is extrinsic or collateral to the matter tried, and not a fraud which was in issue in the former suit. The court, however, after mentioning several exceptions to that general rule says:

"These and similar cases, which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree and open the case for a new and a fair hearing"—citing cases.

In that case, moreover, it appears that the bill was filed "by Walter Van Dyke, United States attorney for that district, on behalf of the United States," which the court held at page 70 of 98 U. S. (25 L. Ed. 93) was in itself a fatal defect.

Prior to the passage of the present naturalization law, in the case of United States v. Gleeson, 90 Fed. 778, 33 C. C. A. 272, the Circuit Court of Appeals for the Second Circuit, by a divided court, refused at the instance of the United States to set aside a judgment of naturalization, although it appeared that the defendant had induced the court to give such judgment through his own false and perjured testimony. In making this decision, the court apparently relied upon United States v. Throckmorton, holding that it had not been overruled,

as was then contended, by Marshall v. Holmes, 141 U. S. 598, 12 Sup. Ct. 62, 35 L. Ed. 870. Under these circumstances, therefore, it becomes proper to notice the construction subsequently put upon the Throckmorton Case by the Supreme Court. Reference is accordingly made to United States v. Minor, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110, wherein the court dealt with a bill in equity to set aside and annul a patent for land on the ground of fraud in its procurement. In considering that question, the court took occasion to examine the Throckmorton Case and distinguish it from the one then under consideration, and in so doing said, at page 241 of 114 U. S., at page 839 of 5 Sup. Ct. (29 L. Ed. 110):

"In Throckmorton's Case, it is true, a part of the relief sought was to set aside a patent for land issued by the United States. But the patent was issued on the confirmation of a Mexican grant after proceedings prescribed by the act of Congress on that subject. These proceedings were judicial. They were commenced before a Board of Commissioners. There were pleadings and parties, and the claimant was plaintiff, and the United States was defendant. Both parties were represented by counsel, the United States having in all such cases her regular district attorney to represent her. Witnesses were examined in the usual way, by depositions, subject to cross-examinations, and not by ex parte affidavits. From this tribunal there was a right of appeal to the District Court, and from that court to the Supreme Court of the United States, by either party. There was nothing wanting to make such a proceeding, in the highest sense, a judicial one, and to give to its final judgment or decree all the respect, the verity, the conclusiveness, which belong to such a final decree between the parties. The patent could only issue on this final decree of confirmation of the Spanish or Mexican grant, and was, in effect, but the execution of that decree.

"It was to such a case as this that the ruling in Throckmorton's Case was applied. The court said in that case, which was a bill to set aside the decree of confirmation: 'The genuineness and validity of the concession from Michelterona, produced by the complainant, was the single question pending before the Board of Commissioners and the District Court for four years. It was the thing, and the only thing, that was controverted, and it was essential to the decree. To overrule the demurrer to this bill would be to retry, 20 years after the decision of those tribunals, the very matter which they tried, on the ground of fraud in the document on which the decree was made. If we can do this now, some other court may be called on 20 years hence to retry the same matter on another allegation of fraudulent combination in this suit to defeat the ends of justice; and so the number of suits would be without limit and litigation endless about the single question of the validity of this document.'

"It needs no other remarks than those we have already made, as to the nature of the proceeding before the land officers, to show how inappropriate this language is to such a proceeding. Here no one question was in issue. No issue at all was taken. No adversary proceeding was had. No contest was made. The officers, acting on such evidence as the claimant presented, were bound by it and by the law to issue a patent. They had no means of controverting its truth, and the government had no attorney to inquire into it. Surely the doctrine applicable to the conclusive character of the solemn judgments of courts, with full jurisdiction over the parties and the subject-matter, made after appearance, pleadings, and contests by parties on both sides, cannot be properly applied to the proceedings in the land office in such cases. * * *

"It has been often said by this court that the land officers are a special tribunal of a quasi judicial character, and their decision on the facts before them is conclusive. And we are not now controverting the principle that, where a contest between individuals for the right to a patent for public lands has been brought before these officers, and both parties have been represented and had a fair hearing, that those parties are concluded as to all the facts

thus in issue by the decision of the officers. But in proceedings like the present, wholly ex parte, no contest, no adversary proceedings, no reason to suspect fraud, and where the patent is the result of nothing but fraud and perjury, it is enough to hold that it conveys the legal title, and it would be going quite too far to say that it cannot be assailed by a proceeding in equity and set aside as void, if the fraud is proved and there are no innocent holders for value."

The above extract shows conclusively that the Supreme Court has drawn a sharp distinction between cases where, as in Throckmorton's, the proceeding was not ex parte, but there had been a sharp controversy pending for years between parties represented by counsel, and in which the finding of the Land Commissioners had been affirmed by the judgment of a federal court, and cases where, as in Minor's and in naturalization cases, they are ex parte.

In United States v. Norsch (C. C.) 42 Fed. 417, Judge Thayer held that the right of the United States to sue for the cancellation of a certificate or decree of naturalization, which had been obtained by fraud, was probably coextensive with its right to sue for the cancellation of patents that had been fraudulently procured, as was the case in United States v. Telephone Company, 128 U. S. 315, 9 Sup. Ct. 90, 32 L. Ed. 450. He also cited other cases, showing the right of a federal court under certain circumstances to annul a judgment of a state court. The Norsch Case, however, has become relatively unimportant since the passage of the act of 1906, which expressly conferred the power upon the United States to institute the proceeding in question.

The power thus conferred has already been exercised by the federal courts in several instances. Thus in United States v. Nisbet (D. C.) 168 Fed. 1005, a certificate of naturalization was held invalid because it had not been verified by competent witnesses, and because the court of naturalization was not authorized to receive depositions to prove residence within the United States for the required period of five years. Again, in United States v. Van Der Molen (D. C.) 163 Fed. 650, a decree of naturalization granted by a state court was set aside. The decree vacated, however, was one which had been procured under the act of 1906, although that fact is immaterial. Again, in United States v. Mansour (D. C.) 170 Fed. 671, a certificate of naturalization granted about eight years previously was canceled, on the ground that the person holding the certificate had not been a bona fide resident of the United States for five years immediately preceding its procurement. Moreover, the act of 1906 was in that case held to be constitutional. In United States v. Simon (C. C.) 170 Fed. 680, a certificate of naturalization was set aside by Judge Lowell which had been issued several years before upon the ground that it had been illegally or fraudulently procured. The constitutionality of the act of 1906 was raised in that case; but the question was held not to be so clear as to warrant a court of first instance in holding it unconstitutional. See, also, United States v. Meyer (D. C.) 170 Fed. 983; United States v. Schurr (D. C.) 163 Fed. 648; United States v. Wayer (D. C.) 163 Fed. 650.

The cases above referred to were all instituted under the act of 1906 for the cancellation of certificates of naturalization, some of which had been procured under the prior act, and some under the present. In view of the unanimity of action on the part of the federal courts of co-ordinate jurisdiction, as manifested in the cases cited, I would hesitate, no matter what my own view might be, to sustain this demurrer. But, irrespective of the support and authority of those cases, I entertain no doubt of the right of the government to maintain this proceeding under the act in question, upon the grounds alleged in the petition demurred to. That the government, especially when thereunto authorized by Congress, has the right to recall whatever of property has been taken from it by fraud, is, in my judgment, well settled, and, if that be true of property, then by analogy and with greater reason it would seem to be true where it has conferred a privilege in answer to the prayer of an ex parte petitioner. A recall of this character injures no one but the fraud doer, and his discomfiture is entitled to but slight consideration.

As already stated, the certificate of naturalization in this case was issued in direct violation of the statute. The respondent, knowing that he had no right to naturalization, nevertheless induced the court to act by means of ex parte false affidavits which conferred upon it the semblance of jurisdiction, when, as a matter of fact, of right it had none, and he knew it. Its action rested solely upon his fraud. It would be strange, indeed, if such procedure could not be reviewed, which in a sense at least is what the act of 1906 purports to do. Legislation of that character is not unconstitutional, and has often been upheld. Calder v. Bull, 3 Dall. 386, 1 L. Ed. 648; Sampeyreac v. United States, 7 Pet. 222, 8 L. Ed. 665; Garrison v. New York, 21 Wall. 196, 22 L. Ed. 612; Freeland v. Williams, 131 U. S. 405, 9 Sup. Ct. 763, 33 L. Ed. 193; Stephens v. Cherokee Nation, 174 U. S. 445, 19 Sup. Ct. 722, 4 L. Ed. 1041; Wallace v. Adams, 204 U. S. 415, 27 Sup. Ct. 363, 51 L. Ed. 547.

In Stephens v. Cherokee Nation, supra, Chief Justice Fuller, speaking for the court, says:

"These appeals are from decrees of the United States Court in the Indian Territory, sitting in first instance, rendered in cases pending therein involving the right of various individuals to citizenship in some one of the four tribes named; most of them came to that court by appeal from the action of the so-called Dawes Commission, though some were from decisions of tribal authorities; many questions are common to them all; and it will be assumed that in all of them the decrees were rendered and the court had finally adjourned before the passage of the act of July 1, 1898, providing for appeals to this court. The act of June 10, 1896, provided 'that if the tribe, or any person, be aggrieved with the decision of the tribal authorities or the Commission provided for in this act, it or he may appeal from such decision to the United States District Court: Provided, however, that the appeal shall be taken within sixty days, and the judgment of the court shall be final.' "

It was contended before the court that it was not competent for Congress to provide for an appeal from the decrees of the United States Court in the Indian Territory, after such decrees had been rendered and the term of court had expired, and especially as they were made final by the statute. In dealing with this point, the court says:

"The contention is that the act of July 1, 1898, in extending the remedy by appeal to this court, was invalid, because retrospective, an invasion of the judicial domain, and destructive of vested rights. By its terms the act was to operate retrospectively, and as to that it may be observed that, while the general rule is that statutes should be so construed as to give them only prospective operation, yet where the language employed expresses a contrary intention in unequivocal terms, the mere fact that the legislation is retroactive does not necessarily render it void. And while it is undoubtedly true that Legislatures cannot set aside the judgments of courts, compel them to grant new trials, order the discharge of offenders, or direct what steps shall be taken in the progress of a judicial inquiry, the grant of a new remedy by way of review has been often sustained, under particular circumstances [citing cases].

"The United States Court in the Indian Territory is a legislative court, and was authorized to exercise jurisdiction in these citizenship cases as a part of the machinery devised by Congress in the discharge of its duties in respect of these Indian tribes; and assuming that Congress possesses plenary power of legislation in regard to them, subject only to the Constitution of the United States, it follows that the validity of remedial legislation of this sort cannot be questioned, unless in violation of some prohibition of that instrument. In its enactment Congress has not attempted to interfere in any way with the judicial department of the government, nor can the act be properly regarded as destroying any vested right, since the right asserted to be vested is only the exemption of these judgments from review, and the mere expectation of a share in the public lands and moneys of these tribes, if hereafter distributed, if the applicants are admitted to citizenship, cannot be held to amount to such an absolute right of property that the original cause of action, which is citizenship or not, is placed by the judgment of a lower court beyond the power of re-examination by a higher court, though subsequently authorized by general law to exercise jurisdiction."

Wallace v. Adams, supra, is to the same effect.

But, conceding that the provision of the act of 1906 goes farther than simply to provide a method of review, it nevertheless warrants, if such warrant were necessary, the United States in filing the petition herein, and this court in treating it as in the nature of a bill in equity, filed for the purpose of setting aside the certificate of naturalization in question, for the fraud of the respondent, by which alone the favorable action of the court was induced. In this aspect the legislation of 1906 simply permits to be done by different courts and somewhat different procedure what before could, under like conditions, in my judgment, have been done by a bill in equity, for the reason that the jurisdiction of the court was fraudulently invoked by the petitioner in an ex parte proceeding. The fraud was practiced in the very act of obtaining the judgment, and it, and it alone, induced the judgment, and where that is the case the judgment is open to attack by a direct proceeding in equity.

The proposition thus announced was laid down by that eminent equity jurist, Vice Chancellor Van Fleet, in Dringer v. Receiver of Erie Railway, 42 N. J. Eq. 573, 581, 8 Atl. 811, affirmed in Dringer v. Jewell, 43 N. J. Eq. 701, 13 Atl. 664, in the following language:

"In order to justify a court of equity in annulling a judgment or decree on the ground of fraud, it must be made clearly to appear that the judgment or decree has no other foundation than the fraud charged, and that if there had been no fraud there would have been no judgment or decree."

Again, in Adams School Township v. Irwin, 150 Ind. 12, 17, 49 N. E. 806, 807, the court said:

"The rule is that the fraud which vitiates a judgment must arise out of the act of the prevailing party, by which his adversary has been prevented from presenting the merits of his side of the case, or by which the jurisdiction of the court has been imposed upon, or, in other words, the fraud relied on must relate to some act in securing jurisdiction."

In Bates v. Hamilton, 144 Mo. 1, 45 S. W. 641, 66 Am. St. Rep. 407, the court, referring to the same subject, held:

"That it must be made to appear that fraud was practiced in the very act of obtaining the judgment."

The language used by the court in Nichols v. Stevens, 123 Mo. 96, 25 S. W. 578, 27 S. W. 613, 45 Am. St. Rep. 514, was as follows:

"In order that a judgment may be set aside upon the ground of its having been obtained by fraud, it must appear that the judgment was concocted in fraud; that fraud was practiced in the very act of obtaining judgment. The fraud in such case must be actual fraud, as contradistinguished from a judgment obtained on false evidence, or a forged instrument on the trial."

To the same effect are Moody et al. v. Peyton et al., 135 Mo. 482, 36 S. W. 621, 58 Am. St. Rep. 604, and Zellesbach v. Allenberg, 67 Cal. 296, 7 Pac. 908. See, also, Herbert v. Herbert, 47 N. J. Eq. 11, 20 Atl. 290, s. c. 49 N. J. Eq. 565, 25 Atl. 366.

But, if any doubt existed as to the power of the government to set aside a decree of naturalization for fraud prior to the act of 1906, that doubt, as already stated, was resolved by section 15 of that act.

As to the question of laches, it has no merit when urged against the United States. Gaussen v. United States, 97 U. S. 584, 24 L. Ed. 1009; Cooke v. United States, 91 U. S. 389, 398, 23 L. Ed. 237; United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L. Ed. 199.

The demurrer will be overruled, with costs, with leave to the respondent to answer the petition within 20 days.