UNITED STATES v. GINSBERG.

(District Court, W. D. Missouri, W. D. July 13, 1914.)

No. 11.

1. ALIENS ☞68—NATURALIZATION PROCEEDINGS.

A proceeding for naturalization in judge's chambers adjoining the courtroom, upon due announcement and notice, sufficiently complied with Naturalization Act June 29, 1906, c. 3592, § 9, 34 Stat. 599 (Comp. St. 1916, § 4368), requiring final hearing to be had in open court, and section 11 (Comp. St. 1916, § 4370), providing that the United States shall have the right to appear.

2. ALIENS ☞71½—NATURALIZATION—QUALIFICATIONS.

In a proceeding under Naturalization Act 1906, § 15 (Comp. St. 1916, § 4374), to cancel a naturalization certificate, respondent's affidavits *held* to show that he did not possess the qualifications required by section 4, subd. 4, providing that "it shall be made to appear to the satisfaction of the court admitting an alien to citizenship that immediately preceding the date of this application he has resided continuously within the United States five years at least and within the state * * * where such court is at the time held one year at least."

3. ALIENS ☞71½—NATURALIZATION—QUALIFICATION OF WITNESSES.

In a proceeding under Naturalization Act 1906, § 15, to cancel a naturalization certificate, respondent's affidavits *held* to show that his witnesses did not possess the qualifications prescribed by section 4, subd. 2, providing that the petition shall be verified by the affidavits of two credible witnesses who are citizens of the United States.

4. ALIENS ☞62—NATURALIZATION—QUALIFICATIONS.

Naturalization Act 1906, § 4, subd. 2 (Comp. St. 1916, § 4352), providing that an alien must have resided continuously within the United States five years and within the state at least one year, contemplates actual and substantial residence which must be coincident with intent.

5. ALIENS ☞68—NATURALIZATION—STATUTE—COMPLIANCE.

In a naturalization proceeding the application and proofs must conform to the clear mandate of the law.

In Equity. Bill by the United States of America against Solomon Louis Ginsberg to cancel his naturalization certificate. Bill dismissed.

Francis M. Wilson, U. S. Atty., of Kansas City, Mo., and M. R. Bevington, Chief Naturalization Examiner, of St. Louis, Mo., for the United States.

George N. Elliott, of Kansas City, Mo., for respondent.

VAN VALKENBURGH, District Judge. The respondent was admitted to citizenship in this court on the 18th day of December, 1912. April 29th the government filed its bill to cancel the certificate under section 15 of the act of 1906, which provides:

That "it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured."

The affidavits filed are annexed to the bill as exhibits. They were tendered and accepted upon the hearing as the evidence upon which

a decree of cancellation should be granted or denied. Respondent in his answer admits the truth of the statements in the affidavits of himself and his two witnesses, Casey and Kirtley, but counsel differ as to the legal effect thereof. Respondent denies the jurisdiction of this court in this proceeding to cancel and set aside the decree originally rendered and the certificate issued pursuant thereto, and further contends that he was entitled to be received as a citizen, and that the bill should be dismissed. The government bases its prayer for cancellation upon three grounds:

"That hearing was not had upon the petition in open court as prescribed by the statute, but the case was disposed of in chambers, a place not an 'open court' within the meaning of the statute, and without the United States being given an opportunity to be heard in opposition thereto.

"(2) That the applicant did not have the continuous United States and state residence, immediately preceding the date of petitioning, required by the statute to confer naturalization jurisdiction upon the court, and to entitle Ginsberg to citizenship.

"(3) That the verifying witnesses, who were permanent residents of Missouri, were incompetent to act in this case, inasmuch as the applicant did not possess the United States and state residence demanded by the statute, and which it was necessary for them to swear to to give the court naturalization jurisdiction in said case, he being an actual physical resident of Brazil for practically all such period of time."

[1] With respect to the first of these contentions the court record of December 17th shows that it was ordered "that court do now adjourn until tomorrow morning at 9:30 o'clock." The affidavit of Ginsberg on this point is as follows:

"That said petition for naturalization 505 was first called for hearing at a night session of the aforesaid court held December 16, 1912 (evidently meant for December 17th), that objection was raised to said petition at that time, and that, after a brief questioning on the part of the court, said petition was passed over with instructions for said affiant and his witnesses to appear at chambers, that is, the judge's room behind the courtroom, the following Wednesday morning, to wit, December 18, 1912, at some time after eight o'clock, when the hearing on said petition 505 would be had;

"That said affiant, together with his witnesses, appeared in the room indicated, to wit, the judge's chambers or room behind the courtroom, about half past 8 in the morning of said December 18, 1912, when all parties were examined by the judge, and order of admission to citizenship made."

In his answer respondent alleges:

"That on said 18th day of December, 1912, at a time fixed by the judge of the court by public announcement, and at the room in the federal court building in Kansas City, Mo., as publicly directed by the judge of the court, he appeared with his two witnesses named in the petition filed herein, and before Hon. Smith McPherson, presiding and acting as the judge of said court, with a clerk and a marshal present and duly acting as such officers, respectively, of said court, as shown by the records of said court, and by a public hearing in such open court."

Then follows a recital of the subsequent proceedings.

Mr. Bevington, chief naturalization examiner for this district, in his affidavit quotes and adopts the foregoing statements of Ginsberg as correctly setting forth what occurred. He concludes therefrom:

"That said naturalization was contrary to the plain and specific terms of the statute, in that final hearing was not had 'in open court,' and was therefore illegal."

The bill upon this point refers to section 9 of said act, which provides as follows:

That "every final hearing upon such petition shall be had in open court before a judge or judges thereof, and every final order which may be made upon such petition shall be under the hand of the court and entered in full upon a record kept for that purpose, and upon such final hearing of such petition the applicant and witnesses shall be examined under oath before the court and in the presence of the court."

The District Attorney in the bill then concludes:

"That the hearing on the application and petition of respondent for naturalization was held in the judge's chambers adjoining the courtroom, and not in open court as by law required."

Upon the record, as thus presented, this court must determine whether, in this respect, the procedure was so irregular and so far in contravention of the statute as to constitute an illegal procurement of the certificate of citizenship.

In conjunction with section 9, supra, section 11 should be read and considered:

That "the United States shall have the right to appear before any court or courts exercising jurisdiction in naturalization proceedings for the purpose of cross-examining the petitioner and the witnesses produced in support of his petition concerning any matter touching or in any way affecting his right to admission to citizenship, and shall have the right to call witnesses, produce evidence, and be heard in opposition to the granting of any petition in naturalization proceedings."

If this court, without due announcement and notice to the government, should take up a naturalization case at an unseasonable hour, and an unusual place, and should grant a certificate upon the ex parte showing of petitioner, I have no doubt that such action would be so irregular as to import illegality in the procurement of that certificate; but a court may sit as a court in chambers adjoining the regular courtroom, and may adjourn and hear any proceeding there upon proper announcement and notice; and this may be done, at some reasonable hour fixed, for the purpose of expediting business and avoiding delay and interference with the regular call in the courtroom at the conventional hour. If the government has been advised of this arrangement, in order that it may exercise its right to appear and take such action as it may see fit concerning any matter touching or in any way affecting the petitioner's right to admission to citizenship, the entire spirit and purpose of the law has been satisfied. I am unable to say from this record that these requirements were not observed. On the contrary, it seems to be sufficiently established that they were substantially observed.

[2, 3] Grounds 2 and 3 may properly be discussed in the same connection. With respect to his residence, the respondent in his affidavit has the following, among other things, to say:

"That in said petition for naturalization said affiant is made to say that he has been a continuous resident within the United States since August 15, 1904, and in the state of Missouri since August 23, 1904.

"That at no time has said affiant made any such claim, and the claim thus made is a result of the action of the clerk of the aforesaid court in framing said petition.

"That as he then explained to the said clerk of court, and to the court itself afterwards this affiant had been an actual physical resident of Brazil, South America, from August 5, 1905, until February 24, 1912, during all of which time he was employed in said country as a missionary by the Baptist Board of Foreign Missions.

"That from August 15, 1904, until June 15, 1905, this affiant had been in the United States, on leave, of absence; that for a period of some seven years prior to said August 15, 1904, he had been living continuously in said republic of Brazil.

"That during the period of five years immediately preceding the date on which his application for naturalization was filed, or from June 7, 1907, to June 7, 1912, this affiant had been actually and physically resident within the United States only from April 10, 1912, to June 7, 1912.

"That during all of said period of employment by the said Baptist Board of Foreign Missions, as a missionary, in Brazil, the said affiant has at the end of each seven years been given a vacation of some 14 months.

"That it has been the affiant's practice to spend such vacations in the United States, visiting with his wife's relatives, following which he would return to his home in Brazil.

"That in the year 1893, this affiant was married in Brazil to Miss Emma Morton, a native of Missouri, and that as a result of this union there have been born and raised in Brazil seven children.

"That this affiant finished his school studies in the year 1890 in England, and thereafter departed for the republic of Brazil, where he served, independent of any denomination, as a missionary until 1893, when he identified himself with the Foreign Mission Board of the Southern Baptist Convention, with whom he has since continuously served.

"That at the time he, the said affiant, declared his intention to become a citizen of the United States, on September 14, 1904, he fully intended to sever his connection with the aforesaid Mission Board, and remain in the United States, but the condition of the work he had been engaged upon in Brazil made it necessary for him to return and again take up his residence in that country.

"That this affiant, during the periods of his residence in Brazil, that is, from the year 1890 on, did not see the gentlemen who acted as verifying witnesses in his said petition for naturalization, they being during said period of time residents of the United States and of the state of Missouri.

"That this affiant at the time of petitioning, and at all times thereafter, had disclaimed any intention of alleging continuous United States residence, stating, whenever asked the actual facts concerning his residence in Brazil, as above recited."

The affidavits of the witnesses as to their acquaintance with and knowledge of the petitioner confirm this statement. The respondent, a native and citizen of Russia, was educated in England, and since 1890 has resided in Brazil, as stated in his affidavit.

Paragraph 3 of the second subdivision of section 4 of the Naturalization Act of June 29, 1906, under the provisions of which Ginsberg's petition was filed, provides that:

The petition shall " * * * be verified by the affidavits of at least two credible witnesses, who are citizens of the United States, and who shall state in their affidavits that they have personally known the applicant to be a resident of the United States for a period of at least five years continuously, and of the state, * * * in which the application is made for a period of at least one year, immediately preceding the date of the filing of his petition," etc.

The fourth subdivision of said section 4 provides:

"It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he

has resided continuously within the United States five years at least, and within the state * * * where such court is at the time held one year at least."

[4] While intention is one of the determining elements of residence, nevertheless intention alone is not sufficient, but must be coincident with the physical act. A citizen and resident of a foreign country may form the intention of becoming a resident of Missouri, but if he never comes to Missouri to take up such residence, his intention is inoperative; nor is a fleeting visit, without purpose or effect to establish a domicile, more effective. True, it has been held that the words "resided continuously" do not mean that the applicant must not have been outside of the territory of the United States during the five years preceding naturalization, but has reference to changes of domicile only. United States v. Cantini (D. C.) 199 Fed. 857; In re Schneider (C. C.) 164 Fed. 335. But these cases presuppose an actual residence; the absences being mere casual visits for such periods and under such circumstances and conditions as not to be inconsistent with that domicile. The act, however, contemplates actual and substantial residence within the United States (it will be noted that the statute uses the word "within," which is significant) not only as tangible evidence of intent, but in order that the petitioner may absorb the spirit of our institutions and do his part in the discharge of reciprocal obligations. This idea is very clearly advanced by Mr. Justice Van Deventer, speaking for the Supreme Court, in Luria v. United States, 231 U. S. 9, 22–24, 34 Sup. Ct. 10, 13 (58 L. Ed. 101):

"But it is said that it was not essential to naturalization under prior laws (Rev. Statutes, §§ 2165–2170) that the applicant should intend thereafter to reside in the United States; that, if he otherwise met the statutory requirements, it was no objection that he intended presently to take up a permanent residence in a foreign country; that the act of 1906, differing from prior laws, requires the applicant to declare 'that it is his intention to reside permanently within the United States'; and therefore that Congress, when enacting the second paragraph of section 15, must have intended that it should apply to certificates issued under that act, and not to those issued under prior laws. It is true that section 4 of the act of 1906 exacts from the applicant a declaration of his intention to reside in the United States, and it is also true that the prior laws did not expressly call for such a declaration. But we think it is not true that under the prior laws it was immaterial whether the applicant intended to reside in this country or presently to take up a permanent residence in a foreign country. On the contrary, by necessary implication, as we think, the prior laws conferred the right to naturalization upon such aliens only as contemplated the continuance of a residence already established in the United States.

"Citizenship is membership in a political society and implies a duty of allegiance on the part of the member and a duty of protection on the part of the society. These are reciprocal obligations, one being a compensation for the other. Under our Constitution a naturalized citizen stands on an equal footing with the native citizen in all respects, save that of eligibility to the presidency. Minor v. Happersett, 21 Wall. 162, 165 [22 L. Ed. 627]; Elk v. Wilkins, 112 U. S. 94, 101 [5 Sup. Ct. 41, 28 L. Ed. 643]; Osborn v. Bank, 9 Wheat. 738, 827 [6 L. Ed. 204]. Turning to the naturalization laws preceding the act of 1906, being those under which Luria obtained his certificate, we find that they required: First, that the alien, after coming to this country, should declare on oath, before a court or its clerk, that it was bona fide his intention to become a citizen of the United States and to renounce forever all allegiance and fidelity to any foreign sovereignty; second, that at least two years should

elapse between the making of that declaration and his application for admission to citizenship; third, that as a condition to his admission the court should be satisfied, through the testimony of citizens, that he has resided within the United States five years at least, and that during that time he had behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same; and, fourth, that at the time of his admission he should declare on oath that he would support the Constitution of the United States, and that he absolutely and entirely renounced and abjured all allegiance and fidelity to every foreign sovereignty.   These requirements plainly contemplated that the applicant, if admitted, should be a citizen in fact as well as in name; that he should assume and bear the obligations and duties of that status as well as enjoy its rights and privileges.   In other words, it was contemplated that his admission should be mutually beneficial to the government and himself, the proof in respect of his established residence, moral character, and attachment to the principles of the Constitution being exacted because of what they promised for the future, rather than for what they told of the past.

"By the clearest implications those laws show that it was not intended that naturalization could be secured thereunder by an alien whose purpose was to escape the duties of his native allegiance without taking upon himself those of citizenship here, or by one whose purpose was to reside permanently in a foreign country and to use his naturalization as a shield against the imposition of duties there, while by his absence he was avoiding his duties here.   Naturalization secured with such a purpose was wanting in one of its most essential elements—good faith on the part of the applicant.   It involved a wrongful use of a beneficent law.   True, it was not expressly forbidden; neither was it authorized.   But, being contrary to the plain implication of the statute, it was unlawful, for what is clearly implied is as much a part of a law as what is expressed.   United States v. Babbit, 1 Black 55, 61 [17 L. Ed. 94]; McHenry v. Alford, 168 U. S. 651, 672 [18 Sup. Ct. 242, 42 L. Ed. 614]; South Carolina v. United States, 199 U. S. 437, 451 [26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737]."

The spirit of the law excludes constructive residence.

[5] In view of these considerations and of statements and admissions of the respondent, there can be no doubt, in my mind, that Ginsberg did not possess the qualifications prescribed by law, and that his witnesses were likewise disqualified.   He was, and had been throughout the required period, a resident of Brazil.   The application and the proofs offered must conform to the clear mandate of the law.   United States v. Martorana, 171 Fed. 397, 96 C. C. A. 353; Ex parte Lange (D. C.) 197 Fed. 769.

There remains to be considered, whether the act clothes the court with authority to set aside the former decree in this action and in the situation disclosed by the record.   It has been held that the term "illegally procured," as used in section 15 of the act, imports a certificate issued by a court without jurisdiction or in violation of the law's procedure; without a petition or witnesses, or notice, or hearing, for example.   United States v. Albertini (D. C.) 206 Fed. 133.   But, on the other hand, the act has been construed to mean that an admission to citizenship through an erroneous construction of the act is an illegal procurement thereof.   United States v. Plaistow (D. C.) 189 Fed. 1006; United States v. Simon (C. C.) 170 Fed. 680; and perhaps inferentially, in United States v. Kolodner, 204 Fed. 240, 124 C. C. A. 1.

The validity of section 15 of the act has been judicially established, and the remedy by independent suit to cancel has been upheld.   United States v. Mansour (D. C.) 170 Fed. 680, affirmed 226 U. S. 604, 33

Sup. Ct. 217, 57 L. Ed. 378; United States v. Plaistow (D. C.) 189 Fed. 1007; United States v. Simon, supra; United States v. Kolodner, supra; United States v. Spohrer (C. C.) 175 Fed. 440; Johannessen v. United States, 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066. In the majority of these cases fraud was specifically alleged and proved. In United States v. Spohrer, supra, the court stated that the Supreme Court has drawn a sharp distinction between cases where, as in Throckmorton's, 98 U. S. 61, 25 L. Ed. 93, the proceeding was not ex parte, but there has been a sharp controversy pending for years between parties represented by counsel, and in which the finding of the land commissioners had been affirmed by the judgment of a federal court, and cases where, as in Minor's, 114 U. S. 233, 5 Sup. Ct. 836, 29 L. Ed. 110, and in naturalization cases, they are ex parte. In United States v. Simon, supra, Judge Lowell found it unnecessary to dispose of the contention that the court has jurisdiction to cancel a certificate because the court of naturalization erred in its findings of fact. In Johannessen v. United States, supra, it was held:

"Prior decisions of this court holding that a judgment of a competent court admitting a person to citizenship is, like every other judgment, competent evidence of its own validity, go no further than protecting the judgment from collateral attack.

"Congress may authorize direct proceedings to attack certificates of citizenship on the ground of fraud and illegality; and section 15 of Act June 29, 1906, 34 Stat. 596, 601, c. 3592, providing for such cases, is a valid exercise of the power of Congress under article 1, § 8, of the Constitution of the United States.

"The foundation of the doctrine of res judicata or estoppel by judgment is that both parties have had their day in court (Southern Pacific R. R. Co. v. United States, 168 U. S. 148 [18 Sup. Ct. 18, 42 L. Ed. 355]); and where a certificate of naturalization was issued without the government appearing there is no estoppel against it, nor is such a certificate conclusive against the public.

"Certificates of naturalization, like patents for land or inventions, when issued ex parte can be annulled for fraud."

It may be noted that the court in that case had no occasion to resolve the question whether error of law or fact amount to illegal procurement. It submits a query as to the conclusive effect of the certificate of naturalization issued after appearance and cross-examination by the government in the following language:

"What may be the effect of a judgment allowing naturalization in a case where the government has appeared and litigated the matter does not now concern us."

It would seem that the answer to this query should apply as well to a case where the government had been advised of the setting of a hearing in naturalization, and had thus been given opportunity to appear and litigate the matter, but had for some reason failed to exercise this privilege. The desirability that errors in naturalization proceedings, whether arising from fraud or otherwise, should be revised and corrected, is apparent. In United States v. Dolla, 177 Fed. 101, 100 C. C. A. 521, the Circuit Court of Appeals for the Fifth Circuit held that a proceeding for naturalization is not a case within the meaning of the act conferring appellate jurisdiction upon Circuit Courts of Ap-

peal, and therefore not appealable. Other courts have assumed jurisdiction in such cases, as in United States v. Brelin, 166 Fed. 104, 92 C. C. A. 88. But in such cases it does not appear that the right of review or the jurisdiction of the appellate court was challenged. Again, where citizenship was granted by a state court, the right of appeal has been denied on the ground that state courts, when acting in naturalization cases, are merely agencies of the national government; that naturalization of aliens is an act of grace, not right, and is not necessarily a business of the courts. These proceedings are conducted in many jurisdictions, state and national; records of such proceedings are not preserved, and in many instances supervision by officers of the government is impracticable. Therefore direct appeals, even if permissible, must generally prove unsatisfactory and ineffective. I therefore incline to the judgment of those courts that have accorded to the fifteenth section its broadest and most comprehensive construction as authorizing cancellation proceedings.

However, the national courts are not fully in accord. Some serious questions, to which I have adverted, have not been authoritatively settled. The Supreme Court itself, in Johannessen v. United States, supra, has expressly reserved its ruling upon a matter of weighty importance in the case at bar. Inasmuch, therefore, as the certificate has been granted, as no fraud is charged, but error of law on the part of the court in a hearing when the matters here complained of were submitted, and in which, as must be presumed from this record, the government had a right to appear and be heard, I feel constrained to leave the decree of naturalization undisturbed. It is extremely desirable, in the administration of this law, that the questions presented should be finally and authoritatively settled. As freely conceded, the government is in a far better position to prosecute the appeal than respondent.

For the reasons stated, the bill will be dismissed, and decree may be entered accordingly.