## In re PATIENCE.

(District Court, S. D. Florida. September 8, 1926.)

1. Aliens ⊜68(3)—Alien will not be debarred from admission to citizenship because he came into country only for visit, and his certificate of entry is marked "in transit."

An alien who has complied with all the requirements of the naturalization laws as to residence, declaration of intention, etc., and is otherwise qualified, is not debarred from admission to citizenship because on his entry he intended to remain only for a visit and his certificate of entry is marked "in transit" but he afterward decided to remain permanently.

2. Aliens ⊜68(3).

That an alien's certificate of entry was marked "in transit" and he was not required to pay head tax, does not debar him from remaining permanently and, on subsequent payment of the tax, becoming a naturalized citizen.

Petition by Roy Lewis Patience for naturalization. Objections overruled.

W. M. Gober, U. S. Atty., of Tampa, Fla., for the United States.

JONES, District Judge. Roy Lewis Patience, on May 3, 1926, filed his petition in this court to be admitted as a citizen under the naturalization laws of the United States. The petition shows that the applicant is a native of Australia, that he arrived in the United States from Sydney, Australia, on April 15, 1920, at the port of New York on the vessel Megantic, and that he has resided within the United States continuously since that date, residing at the time of filing said petition at Pierson, Fla., within the jurisdiction of this court. The petition is supported by a declaration of intention taken out in Brooklyn, N. Y., March 14, 1921, and by certificate of arrival furnished by the immigration authorities showing his arrival as detailed above, with the notation "Admitted in Transit" thereon.

[1] The government has entered formal objection to the naturalization of this petitioner on the grounds that the declaration of intention is invalid and petitioner is ineligible to naturalization, as he is not a legal resident within the jurisdiction of this court.

These objections are based upon the allegation that the certificate of arrival showed petitioner entered this country in transit, and it is the contention of the government "that the petitioner was not legally inspected when admitted to the United States in conformity with the immigration laws for the purpose of permanent residence," and therefore the petitioner is an "intruder in this country, or at best a visitor, and that his legal and permanent place of residence is now in the Dominion of Canada (Sydney, Australia [?])."

The facts in this case, as brought out at a hearing in this court, August 2, 1926, show that this petitioner arrived in New York as set out in his petition, and that at that time it was his intention to visit in New York a month or so and then proceed to London, England. These facts, undoubtedly given to the immigration authorities, caused the notation to be made on his certificate of arrival, "Admitted in Transit." Before the time for his intended departure arrived, the petitioner, being impressed with the desirability of living in the United States, decided to make this country his permanent home, and after residing here about one year decided to make application for citizenship. He therefore appeared in the United States District Court for the Eastern District of New York on March 14, 1921, and made his declaration of intention to become a citizen of the United States, which declaration was filed with his petition for naturalization, as stated above.

In support of the objections of the United States to the granting of this petition, the following cases are depended upon: In re Connal (D. C.) 8 F.(2d) 374; In re Jensen (D. C.) 11 F.(2d) 414; In re United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321; In re United States v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 61 L. Ed. 853; In re United States v. Spohrer (C. C.) 175 F. 440.

I have examined these cases very carefully. The Ginsberg and Spohrer Cases are helpful in laying down the proposition that the "granting of citizenship is a matter of favor and not a right and is effective only after strict compliance with the acts of Congress."

The Ness Case is not in point, for the reason that the applicant in that case was without a certificate of arrival, and the court held that the filing of such a certificate "is an essential prerequisite to a valid order of naturalization."

In the instant case there is no such question, as the petitioner has filed with his petition a certificate of arrival as required by the statute. In the Connal Case, the petitioner was an alien seaman admitted under section 33 of the Immigration Law of February 5, 1917 (Comp. St. § 4289¼rr), which provides for the landing in this country of alien seamen arriving in vessels from foreign ports

"to reship on board any other vessel bound to any foreign port. * * *"

The court in this case sustains the objections of the government on the ground that Connal was not a legal resident of the United States at the time he filed his petition and therefore was not eligible to naturalization. The Jensen Case is similar to the Connal Case, and the objections to Jensen's petition were sustained for the same reason, it appearing that Jensen, an alien seaman, was landed in this country from a foreign vessel for the purpose of reshipping, and the certificate of arrival filed by him contained the following notation: "Deserting seaman—did not pay head tax."

I have no doubt as to the soundness of the decisions in the Connal and Jensen Cases, for the reason that section 34 of the Immigration Act of February 5, 1917, being Comp. St. § 4289¼s (under which act these seamen were permitted to land for reshipping), specifically provides that any alien seaman landing in the United States contrary to the provisions of this act "shall be deemed to be unlawfully in the United States." Under this section it is quite clear that neither of these men acquired such a residence in the United States as is required by the naturalization laws to permit him to become a citizen of the United States, as such residence is made unlawful by act of Congress.

The instant case, it seems to me, is quite different. There was no evasion of the law in the case of this petitioner and no statute declaring him to be "unlawfully in the United States." The facts as brought out at the hearing show that he is in every way qualified for citizenship; that he properly entered the United States; and, while at the time of such entry it was not his intention to remain permanently, I find nothing in the law to make it illegal for him to remain permanently after such an entry. It seems to me if it had been the intention of Congress to make such a residence illegal it would have so provided in the act, as it did in that portion thereof which

14 F.(2d)—40

applies to alien seamen admitted for reshipping.

As to the contention of the government that this petitioner was not "legally inspected when admitted to the United States in conformity with the immigration laws for the purpose of permanent residence," I find nothing in the immigration law requiring any different inspection for aliens contemplating permanent residence from those who come temporarily. The law says: "Upon the arrival at a port of the United States of any vessel bringing aliens it shall be the duty of the proper immigration officials to go or send competent assistants to the vessel and there inspect all such aliens." Section 15, Act of February 5, 1917 (Comp. St. § 4289¼hh). And section 16 (section 4289¼i) of the same act requires "the physical and mental examination of all arriving aliens."

[2] This petitioner from this record has complied in every way with the law governing naturalization by filing a petition, to which was attached his declaration of intention and his certificate of arrival, and proving the required residence of five years and complying with other provisions in the act, with the possible exception of failure to pay the head tax of $8. There is nothing in the record to show whether such a tax was paid by this petitioner or not, but, inasmuch as the law excepts aliens in transit from the payment of such tax, I take it that it was not required in this instance. Under the law this tax may be paid by the alien, and this irregularity, in my opinion, may be corrected by the payment by him of such tax. This petitioner entered this country and filed his declaration of intention before the enactment of what is known as the "Quota Law" (Act of May 19, 1921 [Comp. St. §§ 4289½–4289½dd]), and therefore no question can arise as to his right to enter on account of that law.

It seems to me that the objections of the government in this case are not well taken, and they will therefore be overruled.