COOPER et al. v. REYNOLDS, Collector of Internal Revenue.

District Court, D. Wyoming. October 14, 1927.

No. 1654.

Internal revenue ☞8(3)—For purpose of estate tax, alien decedent held resident of United States.

Decedent, an unmarried Englishman, who, with his brother and sister, had inherited land in Wyoming, came with them to the United States and proceeded to Laramie, where they built a good residence. On entry and at other times decedent stated that Laramie was his home. He took part in local affairs and paid taxes. Three months after coming, he returned to England for the purpose of taking part in the Grand Prix Auto Races in France, for which he had made entry before leaving, and while training for the event in England he was accidentally killed. His estate was administered in Wyoming. *Held*, under the regulations of the department and the general rule that intention is the governing factor in determining domicile, that decedent was a resident of the United States for the purposes of estate tax on his estate.

At Law. Action by Richard F. Cooper and Barbara V. Cooper against Marshall S. Reynolds, Collector of Internal Revenue. Judgment for plaintiffs.

A. W. McCollough, of Laramie, Wyo., for plaintiffs.

A. D. Walton, U. S. Atty., of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge. The above-entitled cause is before the court in the form of an action to recover the sum of $373.52 and interest, on account of estate taxes paid by them as residuary legatees of one John Hartshorn Cooper. The suit is predicated upon the contention that the tax was assessed, collected, and paid under protest upon the government's erroneous theory that the said Cooper at the time of his death was a resident

of England, and that, the decedent actually being a resident of the United States, the rule for taxation in regard to a resident should apply, and the overpayment returned.

The sole point for determination in the controversy is, therefore, the matter of residence of the decedent at the time of his death. Counsel for plaintiffs quote the Treasury Department rule from the Bureau of Internal Revenue, found in Regulation 65, article 311, which I assume is correct, as it has not been challenged by the opposition, as follows:

"An alien actually present in the United States and who is not a mere transient or sojourner is a resident of the United States for the purpose of the income tax. Whether he is a transient or not is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose, which in its nature may be promptly accomplished, is a transient, but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad. when the purpose for which he came has been consummated or abandoned."

In all questions touching the determination of residence or domicile of an individual, it has always been a cardinal principle laid down by the courts that the intention of the person whose residence is being considered, is most persuasive. A fair example of the general expression of the courts may be found in the case of United States v. Jorgenson (D. C.) 241 F. 412, where at page 415 that court said:

"The intention of an alien as to his residence or domicile once established is a most important, and usually a controlling, factor in determining his right to citizenship. * * * The question of intention is always one of fact to be determined from both actions and declarations, and ofttimes conduct is more persuasive than words."

The question, then, for determination by the court, is purely one of fact; trial by jury having been expressly waived by the parties.

John Hartshorn Cooper was born in England, of English parentage, and became a captain in the army of Great Britain. He, with his brother and sister, the plaintiffs here, inherited from the father a considerable estate, which was located in Wyoming. After the death of the father, the interest of the decedent and his brother and sister naturally turned to their inheritance in that state. The plaintiff brother came to Wyoming in 1919, and went to Laramie, where the estate of the father was being administered, and made preliminary arrangements in regard to the erection of a residence, buying some real estate in that city at a considerable price for a community of that size. An architect was employed to draw plans for a very handsome dwelling, and a contract let for the erection of the foundation walls, the general plans of the superstructure to be held in abeyance until he should return to England for his sister and the decedent brother, who were to be consulted and satisfied with the final arrangements of the residence which they were jointly to occupy. The three Coopers came to this country in January, 1921, landing in New York on the 18th day of that month. They came immediately to Laramie, where they began a consultation with respect to the erection of the residence in conference with the architect. Certain changes were made, particularly with respect to the apartments which they severally were to occupy, with a view to suit the convenience and comfort of each individual.

Prior to this, John Hartshorn Cooper had severed his connection with the English army. According to the evidence he had stated to various people that he was taking up his residence in Laramie. Further evidence tending to substantiate this statement as one of honest intention he and his sister acquired from the brother, who had originally purchased it, a one-fourth interest each in the real estate. Contracts were let and, although delays occurred, the erection of the residence proceeded, being eventually completed and occupied by the plaintiffs. Other evidences of intention of the decedent to make Laramie his home appear in his form of conduct in becoming interested in certain civic enterprises at Laramie, personally paying his taxes, including a poll tax, his announced plans for the future in and around Laramie, the investment of some of his personal funds in local securities, and, before his death, paying his proper one-fourth proportion of the expense for the erection of the residence.

Some three months after his arrival at Laramie the decedent returned to Europe for the express purpose of fulfilling an engagement in the Grand Prix Auto Races in France, in which he had made an entry prior

to coming to this country. He repaired to England to practice for the event, but did not go to the place which was commonly known as his former home with his mother, although he, being a bachelor and in the army, had not for several years had a definite and distinct place of abode. During his training for these races he was accidentally killed on May 12, 1921. His estate was administered upon in Albany county, Wyoming, with perhaps some sort of administration upon an interest in some real estate which he still held in England. The most of his personal effects, with the exception of his racing car, were brought with him to Laramie when he came the January previous, and remained there, he taking with him on his return to England only such effects as were necessary for the convenience and comfort of the trip. A certified copy of the certificate of admission of the decedent into this country, taken by the Department of Immigration, shows that the decedent, in answer to the question, "Whether going to relative or friend?" made answer, "Home, Laramie, Wyoming." In answer to the question, "Purpose of coming to United States?" it was stated, "Temporary visit of three months."

While this review of the evidence does not purport to be complete, it shows the general trend of the testimony introduced by both plaintiffs and defendant. On the side of the plaintiffs we have a clear and undoubted announced intention of the decedent, at the time of his coming to this country in January, 1921, of becoming a resident of Laramie, Wyoming. This is supported by his undisputed acts and conduct, in the performance of those very natural and simple things which go with the establishment of a residence. On the other hand, his former residence was in England, and of course would be presumed to remain there, unless evidence were presented which showed that it had been changed. He remained in this country about three months and returned to his native land. Upon his entry into the country he expressed his purpose as being a temporary visit of three months.

The facts are all undisputed, and, when properly analyzed, I think, quite strongly preponderate in favor of the plaintiffs to the effect that the decedent had actually changed his residence to and resided in this country at the time of his death. All the evidence tends to show that the only purpose of his return to England was to fulfill his engagement in the auto races, and in the light of this fact it can readily be explained that, in his answer to the immigration officials that he was making a temporary visit, he had the idea in mind of returning for this engagement at the end of three months. This theory is substantially strengthened by his answer to the former question, and showed that he had no intention of deceiving the immigration officials, because he represented that he was going to his home in Laramie, Wyo. His advent into this country before the law fixing quotas went into effect could in no way, in my opinion, affect the legality of his entry, or the establishment of his residence after he got here. It would not even bar his acquisition of citizenship. In re Patience (D. C.) 14 F.(2d) 624.

For the reasons stated, the finding and judgment of the court will be for the plaintiffs for the amount claimed, with interest, reserving to the defendant his proper exceptions.